## MUG v. OSTENDORF.

[No. 7,340.   Filed December 13, 1911.]

1.   TRIAL.—*Special Findings.—Omissions.*—The omission from the special findings, of facts alleged in the complaint, constitutes a finding against the plaintiff as to such facts, the burden of proving them being upon the plaintiff.   p. 76.

2.   WORK AND LABOR.—*Contracts.—Breach.—Support.*—A contract by a niece to care for and support her uncle is violated where such uncle's conduct was such that the niece was unable respectably to bear it, and she was justified under such circumstances in refusing to abide by such contract any longer, an implied obligation of such contract being kind and respectful treatment by both.   p. 76.

3.   CONTRACTS.—*Breach.—Support.—Services.—Right of Action.*—Where a niece agreed with her uncle to care for, and support him, in consideration of free rent and the use of his home by her, and for a life estate in such home after his death, to be provided for in his will, his unkind and discourteous treatment driving her from his home gives her a right of action, though she failed, in her complaint, to show that the uncle's will in her favor had been changed.   p. 76.

4.   CONTRACTS. — *Breach. — Remedies. — Damages. — Election. — Support.*—The defendant's breach of a contract for his care and support by the plaintiff, gives to the plaintiff a right to an election of remedies, one of which is an action on the *quantum meruit* for the value of the services and support furnished, the amount of damages, however, not to exceed the benefits accruing to her under the completed contract.   p. 77.

5.   CONTRACTS.—*Support.—Breach.—Damages.*—In an action on the *quantum meruit* for care and support of defendant, the special findings showing that because of defendant's breach of his contract the plaintiff was unable to perform her part of such contract to care for, and support the defendant, and further showing that plaintiff cared for defendant ninety-nine weeks, of the

value of $5 a week, and expended for his support $30 a month for such time, the plaintiff is entitled to a judgment for $1,177.50, unless such amount exceeds the amount due under the contract. p. 80.

6. EVIDENCE.—*Judicial Notice.*—*Tables of Mortality.*—*Estates.*— Courts take judicial notice of the "American," "Carlisle," and other well-authenticated tables of mortality, and of their contents; and these tables may be used in ascertaining the value of life estates. p. 80.

7. CONTRACTS.—*Breach.*—*Damages.*—*Minimizing.*—*Burden of Proof.* —In an action for defendant's breach of a contract for his care and support, proof of such breach and the value of the care and support entitles the plaintiff to a judgment for the full value of such care and support, unless the proof further shows that such amount exceeds the benefits given by the contract; and the burden of showing that such amount is excessive is upon the defendant. p. 81.

8. DAMAGES.—*Mitigation of.*—*Pleading.*—*Evidence.*—Proof in mitigation of damages is a matter for the defense; and evidence thereof may be admitted under the general denial. p. 82.

From Superior Court of Tippecanoe County; *H. H. Vinton*, Judge.

Action by Mary J. Mug against John Ostendorf. From a judgment for defendant, plaintiff appeals. *Reversed.*

*A. O. Behm* and *C. E. Thompson*, for appellant.

*Wilson & Quinn*, for appellee.

FELT, C. J.—Appellant brought this action against appellee to recover for services as his housekeeper and for money expended in furnishing him with food and provisions. Issues were joined, the cause was submitted to the court without the intervention of a jury, and upon request the court made a special finding of facts and stated its conclusions of law thereon, which were in favor of appellee. From the judgment rendered thereon this appeal was taken, and the only error relied on for reversal is that the court erred in its conclusions of law.

The court found that on June 13, 1906, appellee, a widower, sixty-five years old was living alone in his home in the

city of LaFayette, Indiana, and was desirous of obtaining. the services of appellant, as housekeeper and to care for him during the remainder of his life; that on said date, he entered into the following written contract with appellant:

"This agreement, made and entered into this 13th day of June, 1906, by and between John Ostendorf and Mary J. Mug, both of the city of LaFayette, Indiana, witnesseth: That whereas, said Ostendorf, who is a widower and getting along in years, and has no housekeeper, is anxious to get said Mary J. Mug, who is his niece, to act as his housekeeper, and said Mary J. Mug has consented to act as such housekeeper, now it is agreed between them as follows: Said Mary J. Mug and her brother, John T. Mug, are to move into the house owned by said John Ostendorf, and which is situate on the following described real estate in Tippecanoe county, Indiana, and is described as follows, to wit: [Then follows description of the property, consisting of four lots in LaFayette.] Said Mary J. Mug agrees to keep house for said Ostendorf and cook for him, and to take care of him if he should become sick and unable to care for himself, and for such housekeeping, cooking and care she is to make no charge. In consideration of such housekeeping, cooking and care bestowed upon him by his said niece, said Ostendorf agrees that said Mary J. Mug shall occupy said real estate hereinbefore described and the house thereon situate for and during the term of her natural life, free from all rent, taxes or other charges while said Ostendorf lives, and further agrees that he will, contemporaneously with this agreement, make his will, and, in said will, will devise said real estate to said Mary J. Mug for and during the term of her natural life. Said Mary J. Mug, during the lifetime of said Ostendorf, shall have such fruit and vegetables as are grown on said real estate as she may desire to use in and about said house, and for putting up for use of the family. In case said Mary J. Mug should move away from said house and cease to keep house for said Ostendorf, then this agreement shall be null and void." (Signatures and acknowledgment omitted.)

The court also found that on said date the appellee, in compliance with the aforesaid contract, made and executed his last will and testament, which contained the following:

"Item 4. I give and devise to my niece, Mary J. Mug, the described real estate situate in Tippecanoe county, State of Indiana, to wit, [Here follows description of property, being the same description as contained in the contract before set out.] to be held, used and enjoyed by her for and during the term of her natural life."

The court further found that appellant left her own home and went to the home of appellee, where she entered upon the discharge of her duties under said written contract; that she kept and performed all and singular the conditions, stipulations and provisions of said written contract on her part to be performed from the date of said contract continuously up to May 6, 1908; that nothing in her conduct or the manner in which she performed her work was objectionable to appellee; that during the time appellant remained in said Ostendorf's home, engaged in the performance of her duties under said contract, he treated her in a cruel and inhuman manner, in this: that he frequently cursed and swore at her without any cause or provocation on her part; that he frequently became intoxicated, and while using intoxicating liquors was cross, vulgar and indecent in and about the home; that appellant did not know that he was addicted to the use of intoxicating spirits prior to the execution of said written contract; that on April 25, 1908, appellee, without cause or provocation on the part of appellant, called her a liar, and ordered her to leave his home; that in compliance with his demands and on account of his cruel and inhuman treatment of her, she left his home on May 6, 1908; that she was ready and willing at all times to keep and perform her part of said written contract with appellee, and did keep and perform it so long as allowed and permitted to do so by him; that she was the niece of appellee; that she was an unmarried woman, forty-six years of age, strong physically, had good health, and was able to perform the work that she agreed to do under the contract; that in carrying out her contract and during

the time she lived in appellee's home, appellant paid out
for groceries and other food supplies for appellee's table
the sum of $30 a month; that said money so expended
belonged to appellant; that the reasonable value of appel-
lant's services as a domestic in appellee's household during
the period of time aforesaid was $5 a week; that she was
paid nothing by appellee for her services as a domestic,
neither did he repay her the money she expended for food
and provisions; that appellee paid nothing toward keeping
up the house and furnishing the table from June 13, 1906,
to May 6, 1908, except to furnish the potatoes and other
vegetables, as agreed in the contract; that before bringing
this action appellant made demand upon appellee for the
value of her services aforesaid, and for the money she had
expended in his behalf; that said demand was refused,
whereupon she instituted this action; that at the time of
executing said written contract, and ever since that time,
appellee was the owner in fee simple of the real estate de-
scribed in said contract; that a fair rental value of said
real estate is $20 a month.

The first paragraph of the complaint alleges generally all
the facts relating to the execution of the contract, the
making of the will, the rendition of the services, the cruel
treatment of appellant by appellee, and the fact that he had
ordered her to leave his home; that he had violated his
contract (1) by destroying his last will and testament, (2)
by his cruel treatment of appellant, and (3) by forcing her
to leave his home.

The second paragraph was upon a common count for
labor performed and provisions furnished at the special in-
stance and request of appellee.

The court's finding is full and conclusive upon the sub-
ject of the cruel treatment of appellant, and upon the facts
showing that appellee compelled her to leave his home, in
violation of his contract, but it is silent upon the proposition
that he destroyed his will. The failure to find that the will

was destroyed, or that the provision bequeathing the life estate to appellant was changed or annulled, is the equivalent of a finding against appellant upon that issue, as she had the burden of proving such facts.

The finding makes it clear and emphatic that in the conduct of the parties appellee was wholly at fault; that appellant was free from fault in her demeanor, and there was no dereliction on her part in the discharge of the duties imposed upon her; that in leaving appellee's home she was fully justified, and did not by so doing violate her contract.

It is beyond dispute that, under the implied obligations of the agreement between appellant and appellee, each was entitled to receive from the other reasonably kind and respectable treatment.

By the express terms of the contract appellant had the right to live in the property described therein, rent free, during the lifetime of appellee, so that it is beyond dispute that he violated his contract in cruelly treating appellant, and by compelling her to leave his home. This is sufficient to give her a right of action, notwithstanding the failure to show that the will had been destroyed, or its provisions, favorable to her, changed or annulled.

The contract is an entirety, and its obligations mutual and reciprocal. Appellant was entitled to the continuing benefit of living in the house, rent free, and of being accorded reasonably kind and courteous treatment from the appellee, in addition to a life estate in the property. 3 Page, Contracts §§1487, 1488; *Gwynne* v. *Ramsey* (1884), 92 Ind. 414, 421.

To show a breach of the contract giving a right of action in her favor, appellant is not required to show that appellee violated all the obligations assumed by him under the contract, but it is sufficient to show that he wrongfully deprived her of some of the substantial and material benefits secured

to her by its provisions. 7 Am. and Eng. Ency. Law (2d ed.) 150; 3 Page, Contracts §§1483-1485; *Dugan* v. *Anderson* (1872), 36 Md. 567, 11 Am. Rep. 480.

When appellee violated his contract in the manner aforesaid, he thereby gave appellant the right to treat it as abrogated. The liability charged against him in the complaint arises out of the services rendered and the money expended by appellant in pursuance of the contract. If appellee had stood by the contract, such liability, both for services rendered, and money expended for provisions, would have been fully discharged according to its provisions, and appellant, instead of seeking a money judgment, would have been compelled to accept, in full discharge of appellee's liability to her under the contract, the joint use of the property, free from all charges during his lifetime, and thereafter the benefits accruing to her from the life estate therein. But when by his own wrongful conduct he deprived appellant'of the present and continuing use and benefit of the property, and cruelly treated her, the situation changed, and under the law she was permitted to choose one of several remedies and invoke a different rule for the measure of her damages. She elected to sue upon the *quantum meruit* and recover the reasonable value of her services rendered and money expended at his special instance and request, and this she may do, subject only to the limitation that the damages recovered in such action shall not exceed the benefits accruing to her under, and measured by, the terms of the contract.

In the case of *Doddridge* v. *Doddridge* (1900), 24 Ind. App. 60, this court had under consideration a case where a man, in writing, agreed that for the services of a housekeeper he would convey to her certain real estate, and bound his heirs, executors and administrators to do so in case he died without making the conveyance. After his death without making such conveyance, his heirs brought suit to quiet their title to the real estate covered by the contract,

and the housekeeper subsequently filed a claim against the estate for a breach of the contract with the decedent, and asked for the value of the land as damages.

In discussing the case, Robinson, J., said: "Upon the filing of the suit to quiet title by the heirs and devisees of the decedent, appellee had then the right to ask a decree for a specific performance of the contract made by decedent, or she might sue for damages accruing from a breach of contract, or she might treat the contract as abandoned, and sue for the value of her services."

In the case of *French* v. *Cunningham* (1898), 149 Ind. 632, our Supreme Court had under consideration the proposition that where an express contract has been made and violated, but work has been done under it, and the defaulting party has received a benefit therefrom, the measure of damages is not the value of the services rendered, but the benefit which the other party has received. The court by Monks, J., said: "This rule, however, does not apply if the party doing the work has been prevented from completing it by the other party, in violation of the contract. When the person employed is doing the work according to contract, and is prevented from completing the same by the other party, in violation of the terms of said contract, the person so prevented from performing his part of the contract can recover the reasonable value of his work, not exceeding, however, the contract price, on the *quantum meruit*, or he may sue upon the contract for the breach thereof, and the measure of damages is the amount that will compensate him, which will include the reasonable value of his work, as well as his loss, if any, on account of not being allowed to complete the same."

The principle heretofore announced has been approved and applied in cases involving the breach of various kinds of contracts. *Cleveland, etc., R. Co.* v. *Moore* (1908), 170 Ind. 328; *Cleveland, etc., R. Co.* v. *Scott* (1907), 39 Ind. App. 420; *Richardson* v. *Eagle Machine Works* (1881), 78 Ind.

422; *Louisville, etc., R. Co.* v. *Hollerbach* (1886), 105 Ind. 137; *Ricks* v. *Yates* (1854), 5 Ind. 115, 118; *Mooney* v. *York Iron Co.* (1890), 82 Mich. 263, 46 N. W. 376; *Lake Shore, etc., R. Co.* v. *Richards* (1894), 152 Ill. 59, 80, 38 N. E. 773, 30 L. R. A. 33.

Appellant's suit is upon the *quantum meruit* in both paragraphs of her complaint. While the contract and will are set out in the first paragraph of the complaint, it is averred that the contract was broken by appellee; that appellant fully performed her part of the contract until appellee made it impossible for her to continue her services; that she furnished the food for his table and paid for it with her own money; that her services were of the value of $5 a week; that she received nothing for the provisions furnished or services rendered; that demand was made therefor before this suit was brought and payment was refused; that the sum of $1,440 is due to her and unpaid, for which she demanded judgment.

Both paragraphs clearly show an election by appellant to treat the contract as abrogated by appellee's breach, and to seek a recovery upon the *quantum meruit* for the money expended and services rendered by her in pursuance of the contract. This she clearly had the right to do, and when she so elected, the contract was at an end except for one purpose. It is the policy of the law that a profit shall not be made out of the breach of a contract, but that a person not in default shall be made whole, on the principle of indemnity, and for this reason, notwithstanding the right of the person to elect his remedy after breach by the other party, his damages, upon suit for breach or upon *quantum meruit* for services rendered and expenses incurred before breach, are not permitted to exceed the amount stipulated in the contract, when ascertainable from the evidence under the issues of the case. *Cleveland, etc., R. Co.* v. *Moore, supra,* at page 342; *Fulton* v. *Heffelfinger* (1899), 23 Ind. App. 104; 22 Ency. Pl. and Pr. 1370.

The court's finding of facts shows that appellant rendered services, and supplied provisions for appellee's table, for twenty-two three-fourths months, or ninety-nine weeks; that her services were worth $5 a week, and she expended of her own money in supplying provisions for appellee's table $30 a month. From these facts it requires only a simple calculation to ascertain that there was due to her for services the sum of $495 and for money expended in carrying out the contract $682.50, or a total of $1,177.50.

This then is the sum due to appellant, unless it exceeds the amount due to her under the original agreement. The consideration moving to appellant under the contract is the joint use of the property with appellee during his lifetime, and the life estate therein after his death.

6. The courts take judicial knowledge of the "American," the "Carlisle," and similar well-known, properly-authenticated standard tables of mortality, and of their contents. *Shover* v. *Myrick* (1892), 4 Ind. App. 7, 16; *Louisville, etc., R. Co.* v. *Miller* (1895), 141 Ind. 533, 563; *Lincoln* v. *Power* (1894), 151 U. S. 436, 441, 14 Sup. Ct. 387, 38 L. Ed. 224; *Gordon, Rankin & Co.* v. *Tweedy* (1883), 74 Ala. 232, 237, 49 Am. Rep. 813; *Kansas City, etc., R. Co.* v. *Phillips* (1893), 98 Ala. 159, 168, 13 South. 65; 20 Am. and Eng. Ency. Law (2d ed.) 883 *et seq.*

These tables, and the calculations based thereon, may be used by the courts in ascertaining the value of life estates. Henry, Probate Law 1168; *McHenry* v. *Yokum* (1862), 27 Ill. 160; *The D. S. Gregory and The George Washington* (1868), 2 Ben. 226, Fed. Cas. No. 4,100; *The Washington* and *The Gregory* (1869), 9 Wall. 513, 19 L. Ed. 787; *Atchison, etc., R. Co.* v. *Ryan* (1901), 62 Kan. 682, 690, 64 Pac. 603; *Kreuger* v. *Sylvester* (1897), 100 Iowa 647, 653, 69 N. W. 1059; *Vicksburg, etc., R. Co.* v. *Putnam* (1886), 118 U. S. 545, 554, 7 Sup. Ct. 1, 30 L. Ed. 257; *Mills* v. *Catlin* (1849), 22 Vt. 98, 107.

Considering the facts found by the court, and those of which we take judicial knowledge, we would be warranted in holding that for the purposes of this case it sufficiently appears that the amount found due to appellant is less than the consideration she would have received had the contract been carried out, but under the peculiar provisions of that instrument such holding is unnecessary to a decision of the questions before us.

The rule limiting the damages to the amount fixed by the contract, where there has been a breach by one party entitling the other to sue for damages, or upon the

7. *quantum meruit* for money expended and services rendered under the contract, or the like, is for the benefit of the defendant. To be entitled to recover, the plaintiff must prove the material averments of the complaint, as in any other civil action. When he does this he may rest, and if further proof is required to limit the damages to the amount of compensation fixed by the contract, the burden is on the defendant to supply it, and failing so to do the plaintiff will be permitted to recover according to his proof. In a large class of cases the contract will itself furnish the necessary proof limiting the recovery. Where the wages, compensation or price is definitely stated in the contract as cash, or its equivalent, in such terms, or at such rate, as to enable the court or jury to apply it to the facts entitling the plaintiff to a recovery, such compensation or price will afford the necessary proof. The contract, when put in evidence by either party, is in for all purposes of the case and available to prove any issuable fact to which it is pertinent. But the consideration of the contract beneficial to the plaintiff may be of such a character that after the plaintiff has shown the breach of the contract, and other proof necessary to make out his case according to the averments of his complaint, there would still be a want of proof to limit the damages to the compen-

sation fixed by the contract. The burden of supplying such proof is clearly a matter of defense, and not a part of the plaintiff's case.

In the case of *Doolittle* v. *McCullough* (1861), 12 Ohio St. 360, the court declared the right to maintain an action for a breach of a contract in harmony with the doctrine as declared in this State, and that decision was referred to as ''the leading case'' by our Supreme Court, in *Cleveland, etc., R. Co.* v. *Moore, supra,* on page 342, in speaking of the measure of damages where the suit is upon the *quantum meruit.*

In the case of *Doolittle* v. *McCullough, supra,* on page 366, after speaking of the plaintiff's right to elect his remedy, the court said: ''The only difference would be, that if the action were commenced upon the expressed contract, the plaintiff might have to prove the terms of the contract, and the rendering of the services according to its terms; whereas, if the action were in general assumpsit the plaintiff would only be required to prove the fact of having rendered the services at the instance of the defendant, and the value of the services; and it would then be incumbent upon the defendants to prove the special contract, to take the case out of the implied contract.''

This precise question has not heretofore been raised, or the rule declared, in Indiana, so far as we are able to ascertain, but the principle involved has been applied generally as a rule of practice.

Proof in mitigation of damages is held to be a matter of defense, and admissible under the general denial. *Indianapolis St. R. Co.* v. *Robinson* (1901), 157 Ind. 414;
8. *Gwinnup* v. *Shies* (1903), 161 Ind. 500; *Indiana Trust Co.* v. *Finitzer* (1903), 160 Ind. 647; *Blizzard* v. *Applegate* (1878), 61 Ind. 368.

In support of the rule before declared, see, also, 22 Ency. Pl. and Pr. 1371, *Perkins* v. *Hart* (1826), 11 Wheat. *237,

*250, 6 L. Ed. 463, and *Schwartzel* v. *Karnes* (1896), 2 Kan. App. 782, 44 Pac. 41.

Appellant proved her case according to her complaint, and the court found the facts accordingly. Proof of the contract and of a breach thereof, warranting her to treat it as abrogated and to elect her remedy, was duly made, and the facts are so found by the court. The contract does not in terms fix appellant's compensation thereunder so as to be available as proof limiting the amount of her recovery without additional proof. The burden of furnishing such proof and procuring the finding of such facts rests upon appellee, and his failure to make out his defense cannot affect appellant's right to a recovery.

The judgment is therefore reversed, with instructions to the lower court to restate its conclusions of law in favor of appellant and to render judgment in her favor as of the date of the original judgment, for the amount found to have been due to her at that time, in the sum of $1,177.50.