# HAY *v.* MERIDIAN LIFE AND TRUST COMPANY.

[No. 7,788. Filed April 24, 1913. Rehearing denied July 2, 1914. Transfer denied January 20, 1915.]

1. INSURANCE.—*Construction of Contract.*—A contract of insurance, the provisions of which are prepared by the insurer, if susceptible to more than one construction, will receive that construction most favorable to the person insured. p. 545.

2. INSURANCE.—*Construction of Contract.*—Where the construction of a contract of insurance as contended for by the insurer would seemingly work a hardship upon the other party, courts will exercise great care in construing same to ascertain exactly what agreement was entered into and to determine if the construction contended for by the insurer is the construction that was assented to by the party insured. p. 545.

3. INSURANCE. — *Life Insurance.*—*"Reserve".*—*"Net Value".*—The "reserve" or "net value" of a life insurance policy is the fund which has accumulated out of the net premiums paid thereunder, and this fund, together with the net premiums to be received in the future, is ordinarily the exact mathematical equivalent of the obligation incurred by the insurer to pay the sum insured. p. 546.

4. INSURANCE.—*Life Insurance.*—*Premiums.*—*Dating Back.* — *Validity of Loan Agreement.*—Where a life insurance policy was dated back seven years, the mere dating back was no consideration for the insured's execution of a loan agreement which, though specifying a larger sum, purported to be for a loan to insured of the reserve that would have been created had the insured paid the premiums during the seven years, but the true consideration was the fact that the insured was placed in exactly the position he would have been in had he entered into the contract seven years earlier, so that such loan agreement was valid only to the extent of the net reserve value, at that time, of a policy issued seven years prior thereto. pp. 546, 548.

5. INSURANCE.—*Nonpayment of Premiums.*—*Extended Insurance.* —*"Indebtedness on Account of the Policy."*—Where a policy of life insurance is dated back a number of years and the insured thereby placed in the position he would be in had he procured the policy at the time to which it is antedated, his execution of a loan agreement for an amount equal to the net reserve value, at that time, of a policy on which the premiums had been paid during the time covered by the period the policy is antedated, is for a valid consideration, and is an "indebtedness on account of the policy" within the terms of a policy providing that any indebtedness on account of the policy outstanding at the time of settlement should reduce proportionately the extended insurance provided for in case of default in the payment of the premiums. p. 547.

6. EVIDENCE. — *Judicial Notice.* — *Mortality Tables.* — The courts take judicial notice of the American Experience Tables of Mortality. p. 548.

7. INSURANCE.—*Life Insurance.*—*Nonpayment of Premiums.*—*Extended Insurance.*—*Construction of Contract.*—Under a life policy providing that after three years' premiums had been paid, if default were made in further payment, the insurer would continue the policy in force for its full amount for the term specified in the table of values for extended insurance, specifying in such table of values the extended insurance and loan and cash surrender values for each year the policy was kept in force, and providing that any indebtedness on account of the policy outstanding at the time of settlement would reduce the values specified in

such table in proportion that such indebtedness bore "to the amount upon which the above guarantees are based," and that the extended insurance should be reduced proportionately in amount of insurance in force, and not in the term of extension, the amount upon which such guarantees were based must be deemed to be the face of the policy, and, on death of the insured after default in payment of premiums and within the term of extension, the beneficiary could recover the face of the policy less any valid indebtedness.    p. 548.

8.  INSURANCE.—*Life Insurance.—Amount of Recovery.—Deduction of Indebtedness.*—Where an insurance policy was antedated seven years, and the insured executed a loan agreement in lieu of payment of premiums for those years, which provided that the indebtedness was a lien on the policy, such agreement was binding on the beneficiary, although made without her knowledge or consent, since she obtained her rights only by the contract of which the loan agreement was a part.    p. 551.

9.  INSURANCE.—*Life Insurance.—Dating Back Policy.—Computing Net Reserve.*—Where a twenty-payment life policy was dated back seven years, and the insured executed a loan agreement in lieu of the premiums for those years, in which it was contemplated that the sum named represented the amount of such premiums less the expense of carrying the insurance for the period the policy was dated back, any additional cost of an arrangement providing that on death of the insured within thirteen years the beneficiary should receive the full amount of the policy without deduction of the loan, could not be considered in determining the net reserve on the policy.    p. 556.

10.  INSURANCE.—*Life Insurance.—Evidence. — Evidence to Vary Terms of Policy.*—Where a policy of insurance stated that the insurance was issued on a four per cent basis, the insurer could not assert that it was in fact upon a different basis, so as to diminish the rights of the insured.    p. 556.

11.  INSURANCE. — *Life Insurance. — Computation of Reserve. —* Where a life policy was antedated seven years, on the execution of a loan agreement by the insured for an amount representing the premiums, less the cost of carrying the insurance for that period, the reserve for such period must be computed as the seventh year terminal reserve, and not as the eighth year initial reserve.    p. 557.

From Monroe Circuit Court; *James B. Wilson,* Judge.

Action by Florence M. Hay against the Meridian Life and Trust Company. From a judgment for the defendant, the plaintiff appeals. *Reversed.*

*Thomas J. Sare, Joseph E. Henley* and *Rufus H. East*, for appellant.

*Cockroft, Odle & Cowern, T. J. Moll, Duncan & Batman* and *John Weaver*, for appellee.

IBACH, C. J.—This was an action to recover upon a life insurance policy, brought by appellant against appellee, in which appellee was successful below. Error is assigned in overruling appellant's demurrers to the second and fourth paragraphs of appellee's answer, in sustaining appellee's demurrer to the second paragraph of reply, in each of the court's conclusions of law upon the facts found, and in overruling appellant's motion for new trial. The second paragraph of complaint, upon which appellant relies, avers that during the lifetime of William Hay, on December 23, 1904, defendant issued a policy of life insurance to him, which continued in force as a limited payment life policy from December 23, 1897, until twenty premiums had been paid, that all premiums accrued or accruing on said policy from December 23, 1897, until December 23, 1904, were treated by defendant at the time of issuing said policy as having been fully paid by the insured, and were so paid, so that by the payment of thirteen annual premiums after the date of issuing of said policy no further premiums were required by said defendant to keep said policy in full force. That the policy contained the following provision:

"Nonforfeiture Provision. If after the premiums for three full years have been paid, this contract shall be defaulted by reason of the nonpayment of any premium or other indebtedness to the company when due, the company, without any action on the part of the insured, will continue this policy in force as paid up nonparticipating term insurance for its full amount, from date of default, without grace, for the term specified in the 'Table of Values' for 'extended insurance'; provided, however, that in case of death within three years from the date of such default, the unpaid premiums shall be deducted from any amount then found to be due under this policy."

That on September 12, 1908, William Hay died and plain-tiff at the time of the execution of said policy was and until his death has been his wife, and as such had a valuable in-terest in his life, and is the person mentioned as the bene-ficiary in said life insurance policy.  That at the time of the death of William Hay there had been paid to the de-fendant by the insured the premiums for nine full years, that default was made in the payment of the premium for the tenth year, and thereupon, under the provision of the policy above set out, said insurance was extended for the full amount of the policy for the term of 14 years and 150 days, and said policy under such provision, was in full force and effect at the time of the death of said William Hay. That decedent and appellant have performed all conditions of said contract on their part to be performed, and on De-cember 14, 1908, duly notified defendant of the death of insured and made proof thereof, and demanded payment of the amount due on said policy, but no part of the same has been paid, and there is now due on said policy $5,000 with interest.  The policy is annexed to the complaint as an exhibit.  The second and fourth paragraphs of answer are practically the same, except that the fourth avers certain additional matter not found in the second.  We shall set out in substance such of the averments of the fourth para-graph as are necessary in our discussion of the questions presented by this appeal.  In this paragraph the defendant admits the issuance of the policy and the death of the in-sured as averred in the complaint, and sets out a provision of the policy which provides that the policy and application therefor, taken together, constitute the entire contract of insurance.  Then the application is set out, which specifies the kind of policy applied for as "an insurance of $5,000 on my life on the 20 payment dated back 7 yrs. C. P. plan for the benefits of Florence M. Hay, my wife if living, other-wise to estate.  Premium to be paid annually $195.25."  It is then alleged "that the letters C. P. in said application

were used as an abbreviation for the words 'commuted premi'um' and were so used and understood by plaintiff's decedent, William Hay, and this defendant; that said commuted premium plan was used only in connection with the dated back policies that the company was then issuing, and which was applied for in said application; that the issuance of the policies of this plan was invariably and uniformly conditioned upon the commutation of the premiums for the years that the policy was antedated, the insured in all such cases being required to execute a loan agreement representing said premiums for the years said policy was antedated; the difference being due to the fact that the risk had not been carried during the said seven years and the defendant had been put to no expense on account thereof during that period; that it was for these reasons that said contract and policy of insurance was known as a policy upon the commuted premium plan.''

Appellee further says that at the time the contract and policy of insurance in suit was issued and as a condition precedent and part consideration for the issuance of the said policy William Hay executed and delivered to appellee, in accordance with the requirements governing the issuance of the kind of policy applied for, a certain loan agreement which said loan agreement is in the words and figures following:

''Bloomington, Ind., 12/23/1904. This Instrument Witnesseth, That the Meridian Life and Trust Company of Indiana has this day loaned the undersigned on Policy No. 5521, the sum of $1,115.45, which, together with interest at 5 per cent per annum, payable on the 23d day of December, in each year hereafter, and any additional loan shall be a lien on said Policy ONLY until paid. Said lien shall be of the same force and effect as though said policy was transferred to said Company by assignment for collateral security therefor. Said loan may be paid at any time before the termination of said Policy. Should the interest on the above amount be not paid when due, it shall be added to the principal of the above loan. Should the under-

signed die within thirteen years from the date hereof, the said policy being then in force and all of the stipulated annual premiums having been paid to the date of such death, then this contract shall be null and void and no amount shall be due thereon.  I hereby authorize said Company to insert number and initial of policy in blank space above.  William Hay, Insured.  J. S. Postal, Witness.''

It is then alleged that said loan agreement was the only consideration received by this appellee for the seven years that said contract and policy of insurance was dated back, and that at the time of the issuance of the said policy and as a consideration of the execution of said loan agreement it was agreed by and between the parties that said contract and policy of insurance should be dated back seven years from December 23, 1904, thereby securing William Hay insurance at a lower premium than he could otherwise have secured; that upon the execution of said loan agreement and its delivery to appellee, appellee dated back said policy seven years, and thereafter, about December 23, 1904, delivered said policy to William Hay; that neither said William Hay nor any other person ever gave this appellee any other or different consideration than said loan agreement for said seven years of dated back insurance, and that the sum named in said loan agreement represents the premiums for the period that said policy was dated back, less the expense of carrying said insurance for said period of seven years; that appellee has never received any payment upon said loan agreement either of principal or interest.  That the first cash premium upon said policy was paid by William Hay about December 23, 1904, and that William Hay also paid the premium of $195.25 due December 23, 1905, which carried the policy in force up to December 23, 1906; that on December 23, 1906, he executed a premium note which kept the policy in force until June 23, 1907, when default was made in its payment, and the company took a judgment for the earned portion of the premium, repre-

sented by the note, which judgment had not been paid. Then there is set out the nonforfeiture clause of the policy as set out in the complaint. It is then averred that appellant's decedent after the lapse and cancellation of his policy for nonpayment of premiums, made no request for a paid up policy and by reason of his failure to make such request, said decedent would, under the terms of said policy, if there had been no indebtedness outstanding against the same, have been entitled to extended insurance for 14 years and 150 days, as provided by the table of values, but the benefits extended to the insured by the table of values and guarantees were to be reduced in proportion to the indebtedness outstanding against said policy at the time of settlement; that the provision referred to reducing said values and benefits is contained upon the second page of the said policy at the foot of the said table of values and reads as follows:

"Any indebtedness on account of this policy outstanding at time of settlement, will reduce the values specified herein, in the proportion that such indebtedness bears to the amount upon which the above guarantees are based; the extended insurance being reduced proportionately in amount of insurance in force, not in the term of extension."

That the amount upon which said guarantee of 14 years and 150 days of extended insurance was based was $841; that said sum of $841 was also the net value of the said guarantee of 14 years and 150 days; that the commuted premium for the years that said policy was antedated, as evidenced by the loan agreement above set forth, was $1,115.45, which was an indebtedness on account of said policy and the premiums thereof, which by its terms, was made a lien upon said policy; that by reason of the above mentioned facts, the table of values and guarantees set out on page 2 of said policy, including the provision for extended insurance, was rendered inoperative on account of said indebtedness above mentioned, as said indebtedness ex-

ceeded the amount upon which the guarantee of 14 years and 150 days of extended insurance was based, and that by reason thereof, at the time of the death of plaintiff's decedent, and at all times since, defendant was not indebted to said William Hay, or to the plaintiff, Florence M. Hay, the beneficiary named in said policy, in any sum whatever.

By the reply it is averred in substance that the loan agreement was given without any consideration except the dating back of the policy, that the loan was not made in accordance with the terms of the policy, that the policy provided that the insured might change the beneficiary in accordance with the express terms in the policy, yet at no time was such change made, and that appellant as beneficiary had a vested interest from the time of the delivery of the policy.

The court's finding of facts contains the policy and application in full, and sets out the facts practically as averred in the fourth paragraph of answer. Its conclusions of law were: "1. That William Hay not having requested paid up insurance, would by the terms of said contract and policy of insurance, if entitled to anything, be entitled to the extended insurance values set out upon page 2 of the policy under the head of 'Table of Values.' 2. That the loan agreement executed by said William Hay was a valid indebtedness on account of the policy issued, such as would reduce the values specified in the 'Table of Values' contained in said policy, and that inasmuch as the amount upon which the guarantee of 14 years and 150 days of extended insurance was based, was $841.00, while the indebtedness evidenced by the loan agreement amounts to a much greater sum, the policy under its terms never had any extended insurance value, and the plaintiff is, therefore, without basis for her claim. 3. That the plaintiff should take nothing by her cause of action and defendant should have judgment for its costs."

We shall first proceed to consider the sufficiency of ap-

pellee's second and fourth paragraphs of answer. This involves the construction of the application for in-

1. surance, the policy, and the loan agreement. In the construction of contracts such as the present, the provisions of which are prepared by one party, it is the rule that where the contract is reasonably open to more than one construction, that construction will be adopted which is against the party preparing the contract. This rule is well settled, and is eminently just and fair. Counsel for appellant have characterized the contract before us as harsh and unconscionable. Counsel for appellee insist that the contract is not unfair, that the only possible objection which could be urged is that during the early years of the life of the policy it was so framed as to require the insured to pay the premiums if he was to receive any benefit thereunder. However, if the insured fully understood the contract at the time of its inception, and assented to its provisions, he would be entitled to no relief, merely because it was harsh or unfair. But in a case such as the present, where

2. it would seemingly work a hardship to the other party if the construction is adopted which is contended for by the party which prepared the contract, courts will exercise great care in construing the contract, in order to ascertain exactly what agreement was entered into by the parties, and to find out whether the construction claimed by the one party which prepared the contract is actually the construction which was assented to by the other party. See *Glens Falls Ins. Co.* v. *Michael* (1907), 167 Ind. 659, 677, 704, 74 N. E. 964, 79 N. E. 905, 8 L. R. A. (N. S.) 708; *Nellis* v. *Western Life Indemnity Co.* (1913), 100 N. E. (N. Y.) 1119; *Anson* v. *New York Life Ins. Co.* (1911), 252 Ill. 369, 96 N. E. 846, 37 L. R. A. (N. S.) 555.

It is contended that the loan agreement was made without consideration. No money passed between the parties, but the loan agreement was signed at the time the con-

tract of insurance was made, and the policy was dated
3. back seven years.  If the policy had actually been
issued on December 23, 1897, on the twenty pay life
plan, and the premiums had been paid up to December 23,
1904, the policy would at that time have had a certain
value, commonly known as the net value, or reserve, made
up of the accumulation of the balance of past premiums not
absorbed.  The progressively increasing risk from age to
age is paid for by an average premium uniform throughout
life, or a specified term of years.  The average premium
must always be greater in the early years of assurance than
is required for the risk in those years and the surplus part
of the premium which remains in hand after providing for
the risk must be husbanded, and accumulated at the funda-
mental rate of interest, in order that it may provide for
the years in which the value of the risk is greater than the
premium.  King, Inst. of Actuaries §9, p. 318.  The re-
serve is the fund which has accumulated out of the net
premiums payable under any policy.  On the average, this
fund, together with the net premiums to be received in
future, is the exact mathematical equivalent of the obliga-
tion incurred by the company to pay the sum insured.
Willey and Moir, Prin. and Prac. of Life Ins. (8th ed.) 24.

There was no insurance actually carried on the life
4. of the insured during the seven years the policy was
dated back, and the dating back of the policy would
be no consideration to the insured, unless he was thereby
placed in the same position in which he would have been had
he actually entered into the insurance contract seven years
sooner.  Appellee claims that this was done, and that the
reserve which would have been created had the insured paid
premiums for seven years was loaned to him.  If this is the
situation created by the contract, the parties would be placed
in the same position that they would have been in if the
contract had been made seven years sooner, and the premi-
ums paid.  The inducements to entering into such a contract

might be summed up as follows: Appellee by its agent in effect would say to the insured: "If you had taken out insurance seven'years ago, you could have obtained it at a lower rate than the rate for your present age; if you had taken out a policy then it would have had a certain value now, known as the net value or the reserve; you may be able' to obtain insurance now at the rate at which you could seven years ago, by our loaning to you an amount equal to the reserve on a policy taken out seven years ago, upon your agreement to pay us five per cent interest upon the loan, and to repay the loan to us; thus your insurance will mature seven years sooner, and we will obtain five per cent interest on the reserve thus created. If you die within thirteen years, the loan will be cancelled, provided all premiums due have been paid." Such a contract would be fair,

5.  whether or not especially advantageous to either party. Such a loan would, we believe, be valid, and upon consideration, the effect being the same as if an actual money loan had passed. We also believe that such a loan would be "indebtedness on account of the policy", and this position is supported by the following authorities: *Omaha Nat. Bank* v. *Mutual Benefit Life Ins. Co.* (1897), 81 Fed. 935; *Omaha Nat. Bank* v. *Mutual Benefit Life Ins. Co.* (1897), 84 Fed. 122, 28 C. C. A. 300; *Black* v. *Franklin Life Ins. Co.* (1910), 133 Ga. 859, 67 S. E. 79; *Pavy* v. *Franklin Life Ins. Co.* (1910), 125 La. 262, 51 South. 191. See also *Brooklyn Life Ins. Co.* v. *Dutcher* (1877), 95 U. S. 269, 272, 24 L. Ed. 410. Our statute (§4699 Burns 1914, Acts 1905 p. 181), provides that insurance companies may make "loans upon its own policies" as one of the manners of investing their funds, provided such loans shall not exceed the reserve against the policy at the time the loan is made. It has been the custom of the auditors of the State to accept loan agreements such as the present as among the securities permitted by the section above cited, and the Attorney-General has advised the auditors that such loan contracts

are "loans upon its own policies" under the statute, provided the loan does not exceed the estimated reserve or cash value of the given policy at the date it is offered for deposit. Appellee has based its entire argument for the validity of this loan upon the fact that it was made out of a reserve created by past premium payments, and such is the theory of its answers. But the facts averred in the answers do not show that the loan under consideration was made out of the reserve. The policy is a twenty payment life policy, and is, according to its provisions, based on the American Experience Tables at four per cent. It was dated back, purporting to issue at the age of 38. Courts take judicial notice of the American Experience Tables of Mortality. *Mug* v. *Ostendorf* (1911), 49 Ind. App. 71 96 N. E. 780, and authorities cited. By reference to the American Experience Tables of Mortality with net premiums and net values computed therefrom on the basis of four per cent interest, it is found that the terminal net value, or reserve value per $1,000 of whole life policies by twenty equal annual premiums, issued at the age 38, is at the end of the seventh year $150.55. The reserve on $5,000 would thus amount to $752.75. It follows that there was a valid consideration for the loan agreement to the extent of $752.75 or the net reserve value according to the American Experience Tables at four per cent. As to the amount of loan above the reserve value the agreement was without consideration, and therefore void.

Under the facts as averred in the answer, William Hay, not having requested paid up insurance, would by the terms of said contract and policy of insurance, if entitled to anything, be entitled to the extended insurance values set out upon page two of the policy under the head of "Table of Values". The nonforfeiture provision of the contract is in the following words:

"If after the premiums for three full years have been paid this contract shall be defaulted by reason of the non-payment of any premium   *   *   *   the company, without any action on the part of the insured, will continue this policy in force as paid-up non-participating term insurance for its full amount, from date of default without grace, for the term specified in the 'Table of Values' for 'extended insurance' provided, however, that in case of death within three years from the date of such default the unpaid premiums shall be deducted from any amount then found to be due under this policy."

The table of values appears in the policy in the following form:

## Table of Values.
### (Hereinafter referred to.)

| Extended Insurance. | | Loan Values. | Cash Surrender Values. | | |
|---|---|---|---|---|---|
| After the completion of | For $5000.00 will continue in force for the term of | After the completion of | The premiums for the current year being paid the Company will loan, | After the completion of | The Company will pay upon legal surrender of this policy |
| 9 full years | 14 yrs. 150 days | 9 full years | $990.00 | 9 full years | $845.00 |

At the foot of this table of values, which is carried out for each year from three to twenty, is the following clause:

"Any indebtedness on account of this policy outstanding at time of settlement, will reduce the values specified herein, in the proportion that such indebtedness bears to the amount upon which the above guarantees are based; the extended insurance being reduced proportionately in amount of insurance in force, not in the term of extension."

Appellee contends that the foregoing clause must be taken into consideration in construing the nonforfeiture clause. It may be remarked that the table of values is made a part of the contract as "hereinafter referred to," and that this clause is not afterwards referred to. The only references afterwards made to the table of values are to the "amount specified" or "term specified" in the table of values, or the

"cash value as shown in" the table of values. These amounts, terms, or values, are set out plainly in the body of the table, with nothing to call attention to the clause in fine print at the foot of the table. There is no after reference whatever to this clause, and no means by which it would naturally come to the attention of the policy holder. It is not made coördinate with the other clauses which set forth prominently the privileges of the insured, nor is it placed among the "Benefits, Privileges and Conditions", but on the contrary, it is obscurely tucked away in another part of the policy. The one who prepared the contract certainly did not use much care to bring the statements contained in this clause to the attention of one who reads the policy. But granting for the purpose of discussion that this clause must be given effect as a part of the policy, still, when taken in connection with the other provisions of the policy, we can not construe it as has appellee. Appellee would construe it as reading in effect, "will reduce the values specified herein, in the proportion that such indebtedness bears to the amount of the cash surrender value." If appellee intended such to be the meaning of the clause, it should have prepared it in plain words to read in conformity with the meaning intended, and should not have inserted the ambiguous and misleading clause which is found in the policy.

The nonforfeiture clause provides that the company will upon default continue the policy in force for *its full amount* (our italics) for the term specified in the table of values for "extended insurance". The clause at the foot of the table of values provides that extended insurance will be reduced, in case of indebtedness on account of the policy, proportionately in *amount of insurance in force,* (our italics) not in term of extension. The words "amount upon which the above guarantees are based," may refer to the amount of $5,000 which is the amount of the face of the policy, the amount placed at the head of the table of values, and prominently featured in the policy many times, with just as much

reason as they may refer to an amount somewhat less than the reserve, which latter amount does not appear anywhere in the policy, and is only known to the insurer who prepared the contract, and not to the insured who must accept it as prepared. The sum of $5,000 is the basis upon which the reserve and all the values in the table of values are computed, and therefore in fact is the amount upon which the guarantees are based. We believe that an ordinary man of fair intelligence when reading the clause in question in connection with the other provisions of the policy, would construe the policy to the effect that the words "amount upon which the above guarantees are based" refer to the amount of $5,000, the face of the policy. Our conclusion then is, that under this clause, the company is liable for the amount of the face value of the policy, less the amount of valid loan and interest, and less the amount of the unpaid premiums due within three years from the date of default. It follows that the demurrers to the second and fourth paragraphs of answer should have been sustained, and that the court erred in its conclusions of law. The same result would follow if we were not to give effect to the clause at the foot of the table of values as a part of the policy, since by its terms the loan agreement is a lien against the policy.

Appellant has contended that the loan agreement is not binding upon the beneficiary. With this we can not agree. The beneficiary obtained her rights only by the contract entered into by the insured and the insurer. The loan agreement was a part of that contract, entered into at the same time, and must be given the same effect against the beneficiary as against the insured. Therefore she is bound by the loan agreement, so far as valid.

Judgment reversed, with directions to sustain the demurrers to the second and fourth paragraphs of answer, and for further proceedings consistent with this opinion.

## ON PETITION FOR REHEARING.

IBACH, P. J.—Appellee in its brief for rehearing has attacked the action of this court in holding that on the facts shown by appellee's answers, the amount of the loan to appellant's decedent was larger than the amount of valid loan which could be made on said policy. In order to present one of appellee s contentions, we quote, as follows from its brief: "The policy sued on was a twenty payment life, with first year preliminary term, requiring a different reserve, and was issued in connection with the loan agreement, which added an element and an obligation that the ordinary twenty payment life policy, or the ordinary twenty payment policy with one year preliminary term insurance, does not have, and which was not included in the figures shown in the American Experience Tables of Mortality referred to by the court. The additional element of obligation I refer to, which would increase the amount of reserve, was the provision in the loan agreement that, in the event of the death of the insured at any time within thirteen years after the policy was actually issued, all of the indebtedness evidenced by the loan agreement would be canceled. The amount of the indebtedness thus evidenced in this case was $1,115.45, with accumulating interest. * * * The company could not pay the usual obligation of the twenty payment life policy with first year preliminary term, and in addition pay $1,115.45 with only the reserve necessary to pay the face of the policy. The agreement to cancel $1,115.45 worth of indebtedness amounts to an agreement to pay that much insurance in case of death. So instead of the insured having $5,000 of insurance he had $6,115.45 and accumulated interest during thirteen years and $5,000 thereafter. The court will bear in mind that the annual premium charged the insured was exactly the same as the annual premium charged at an age seven years younger for $5,000 of insurance, and the same amount of premium was charged

during the whole twenty year payment period. There was no extra premium named in the policy to cover the additional obligation of canceling the indebtedness given for the seven past premiums, and the whole amount of money which the company would have to obtain with which to meet its obligation to cancel the indebtedness in the event of the insured's death within thirteen years, had to be accumulated during the first seven years of the policy and set aside as reserve, in addition to the reserve necessary to meet the ordinary obligations of the twenty payment policy. The reason all of the amount necessary to meet the indebtedness obligation had to be accumulated during the first seven years is that the insured was charged nothing for that purpose out of the remaining thirteen annual premiums. No further sum was to be collected to assist in meeting the indebtedness obligation. What we have to find out then, is what amount of reserve is necessary at the beginning of the eighth year to meet the obligation to pay off or cancel an indebtedness of $1,115.45 in the event of the death of the insured within thirteen years, and also to meet the ordinary obligations of the twenty payment life policy. This amount can be arrived at by ascertaining the amount of reserve at the beginning of the eighth year necessary to meet the obligations of the ordinary twenty payment life with first year preliminary term insurance policy, assisted by the remaining thirteen annual premiums, and then by ascertaining the amount of additional reserve necessary to cover the insurance of the indebtedness upon a man forty-five years of age, for thirteen years, and thereupon adding the two sums together. This thirteen-year insurance is simply term insurance sufficient to cover mortality. There is no cash surrender, paid up or extended insurance values in connection with it. It is the cheapest kind of insurance in which nothing is charged, except a sum sufficient to take care of mortality, thereby making the amount of reserve as small as possible. *  *  * This policy was based on the American

Experience Tables with three and one-half per cent interest instead of with four per cent interest as stated in the opinion and as stated on the face of the policy. The company had a right to value the policy on the higher three and one-half per cent basis notwithstanding the policy stated it was based on a lower four per cent basis, because §4687 Burns 1908, Acts 1903 p. 45, permits a company to value its policies on a higher basis than the minimum four per cent basis,  *  *  * The company changed from a four to a three and one-half basis about the time it commenced issuing the commuted premium policies and actually never valued its dated back policies on anything but a three and one-half per cent basis. In this case, by a clerical error, the company failed to substitute the words 'three and one-half' for the word 'four' in the policy value clause. I realize there is nothing in the record in this case showing this fact, but the court will take judicial notice of public records in the office of the auditor of State, and there it can find the valuation of this very policy made by the actuary of the insurance department of Indiana, and from his computations, it will appear that the State valued this policy on a three and one-half per cent basis and required the company to put up with the auditor sufficient securities to maintain the higher reserve required upon that basis. So that by referring to the American Experience Tables of Mortality, of which the court in this case took judicial notice, we find that the reserve value on $1,000 of twenty payment life insurance with first year preliminary term, with three and one-half per cent interest at the age of thirty-eight, at the beginning of the eighth year, is $179.83. At page 224 of Willey and Moir, Prin. and Prac. of Life Ins. (8th ed.), showing said tables, the seventh year terminal reserve on $1,000 of said insurance is shown to be $148.98. Add the net premium for the eighth year of $30.94 to find the eighth year initial reserve. On a like policy for $5,000 the reserve would be $899.15. There are no tables published which show the reserve under such a form for thir-

teen-year term policy as is here involved, but the actuary of the insurance department of Indiana prepared such a table, which is a public record in the State auditor's office, based upon the American Experience Tables of Mortality with three and one-half per cent interest, for the purpose of valuing this and similar policies. From this table it appears that the amount of reserve for a single premium thirteen-year term policy issued at the age of forty-five (the insured's actual age at the date of the execution of the loan agreement) for $1,115.45 and accumulating interest, on a three and one-half per cent basis, is $224.50. These two amounts added together make $1,124.05. This figure is in excess of the amount of the loan agreement. The reason is that the loan agreement is the eighth midyear reserve and not the eighth year initial reserve. All of the policies written in a given year are valued by the insurance department of Indiana at the middle of the year, and their midyear reserve or valuation is ascertained by the insurance department. The company could have legally made the loan agreement for the eighth year initial reserve, but chose to make the loan agreement a few dollars less because the policy would be valued as of the eighth midyear reserve, as above stated. The court, in its opinion in determining the reserve on the ordinary twenty payment policy, took the seventh year terminal reserve. The fact that the policy was dated back seven years, no doubt, made it seem proper to find the amount of the seventh terminal reserve. The fact in this case was that with the first actual premium payment, which was made in advance of the issuance of the policy, the policy commenced its eighth year. In other words, the day of the issuance of the policy was the beginning of the eighth year. This policy never had any seventh year terminal reserve because it did not come into existence until the beginning of its eighth year. So to ascertain the amount of reserve, one would have to ascertain the eighth year initial reserve. During a policy year the reserve is decreased by mortality,

except in certain forms of endowment insurance, but increases by the next premium payment. So to find the midyear reserve add the initial reserve and the terminal reserve and divide by two. The midyear reserve on the $5,000 twenty payment life with first year preliminary term policy is $891.90, and the midyear reserve on the single premium thirteen-year term policy is $223.55. Adding the two sums together, we obtain the $1,115.45, for which the loan agreement was taken."

We have quoted thus fully from appellee's brief, in order to show the peculiar nature of the questions involved, and the manner in which appellant justifies the amount 9. of the loan. Appellee's contention as to thirteen-year term insurance to meet the obligation to pay off or cancel the indebtedness in the event of insured's death within thirteen years, and the necessity of adding the reserve to carry such insurance to the amount of indebtedness, is foreign to the issues in this case. Appellee's answer expressly avers "that the sum named in said loan agreement above set forth, represents the premiums for the period that said policy was dated back, less the expense of carrying such insurance for said period of seven years." Insurance to meet the obligation to cancel the loan if the insured should die within thirteen years is, by appellee's own statements, no part of the expense of carrying the insurance for the seven years that it was dated back.

As to the contention that the policy should have been valued on a three and one-half per cent basis, it is true that under the law appellee has a right to issue its policies 10. on a three and one-half per cent basis. But the contract states that the insurance in question was issued on a four per cent basis, and having thus contracted with insured, appellee will not be permitted to assert, in any manner to diminish the rights of the insured, that its policy was actually issued on a three and one-half per cent basis.

Next it is insisted that the calculation of the reserve should have been made as the eighth year initial reserve, and not as the seventh year terminal reserve. The specious argument is made that as the policy did not come into existence until the beginning of the eighth year, it never had any seventh year terminal reserve. The policy did not exist at all during the seven years for which appellee made its loan, yet if the fiction of its existence during that time is sufficient on which to base the loan, the policy will be regarded as actually existing during that time, for all purposes as well as some purposes. The initial reserve for any year is much larger than the terminal reserve for that year or the year preceding, for the reason that the initial reserve for any year is computed just after the payment of a premium, and includes the reserve necessary to carry the risk during the whole of the succeeding year. When the terminal reserve is computed at the end of the year, it is smaller than the initial reserve for that year by the amount required to carry the risk through the year then at its close. Manifestly the increase in the amount of the eighth year initial reserve over the seventh year terminal reserve has nothing to do with the expenses of past years. All which the company could legally loan to Hay was an amount equal to the seventh year terminal reserve, not to the eighth year terminal reserve, or midyear reserve. The eighth year initial reserve did not come into existence until after payment of the eighth premium, and the amount of the difference between the seventh year terminal and the eighth year initial reserve is cared for by adding to the seventh year terminal reserve a portion of the eighth premium. The loan is averred to represent the premiums for the past seven years, less the expense of carrying the insurance for those years. But by charging the insured in the loan with the eighth midyear reserve, he was charged with an amount which he had already paid in the form of

the eighth year premium, namely, the difference between the seventh year terminal reserve and the eighth midyear reserve.

It is also urged that the insurance here was not ordinary twenty pay life, but twenty pay life with one year preliminary term, and that the reserve should have been calculated as such. We grant this, but such calculation would make the amount of reserve yet smaller than was our calculation.

We hold that the loan was valid and binding to the amount which could be legally loaned, computed according to the principles laid down in this opinion. We are satisfied with our conclusion in the original opinion as to the construction of the policy. The petition for a rehearing is overruled.

NOTE.—Reported in 101 N. E. 651; 105 N. E. 919. As to delivery and acceptance of policies of insurance, see 138 Am. St. 29. As to the computation of extended insurance, where policy holder has borrowed on the policy, see 23 L. R. A. (N. S.) 828.