OMAHA NAT. BANK v. MUTUAL BEN. LIFE INS. CO.

(Circuit Court, D. New Jersey. June 16, 1897.)

1. LIFE INSURANCE—APPLICATION OF RESERVE ON LAPSE OF POLICY—INDEBTEDNESS.

Where the holder of a life policy has signed certificates of loan for 30 per cent. of the annual premiums paid by him, and the policy provides for the application by the company, in case of forfeiture for nonpayment of premium, of the net reserve, "less indebtedness to the company on the policy," to the purchase of extended insurance on the life of the assured, the company may deduct the amount of such loan certificates from the net reserve, and apply only the residue to the purchase of such insurance.

2. SAME—OPTION TO PAY INDEBTEDNESS.

Where a life policy provides that, in case of lapse for nonpayment of premiums, the company shall apply the net reserve, less any indebtedness of the assured, as a single premium in the purchase of extended insurance, or, if the assured shall so elect within three months, in the purchase of a paid-up policy, and also that in such case the indebtedness, if any, may be paid in cash, in which case the entire net reserve shall be so applied, the payment of such indebtedness must be made within the three months, or the company will be authorized to deduct it from the net reserve, and apply only the re-

mainder to the purchase of term insurance, and cannot be compelled to extend such insurance on a subsequent tender of payment.

In pursuance of a stipulation in writing waiving a jury, this cause was tried by the court without the intervention of a jury on the 20th day of April, 1897. And now, this 16th day of June, 1897, upon due consideration the court finds the following stated facts:

(1) This is an action by the Omaha National Bank, as assignee of Frank C. Johnson, to recover $20,000, the amount insured by the defendant under its two policies, numbered respectively 165,039 and 165,040, each dated January 15, 1891, and providing that in consideration of the payment of the annual premium of $359.40 on each November 11th during the continuance of the policy the defendant insures said Johnson's life in the sum of $10,000 under each policy, payable to Johnson, his executors, administrators, or assigns, at his death, and also providing that, in case the premiums were not paid when due, the policies should cease and determine, subject to the provisions of the company's nonforfeiture system as indorsed thereon with the accompanying table.

(2) The nonforfeiture provisions indorsed on each of the policies provided that:

"When, after two full annual premiums shall have been paid on this policy, it shall cease or become void solely by the nonpayment of any premium when due, its entire net reserve by the American Experience Mortality and interest at four per cent. yearly, less any indebtedness to the company on this policy, shall be applied by the company as a single premium at the company's rates published and in force at this date, either—First, to the purchase of nonparticipating term insurance for the full amount insured by this policy; or, second, upon the written application by the owner of this policy, and the surrender thereof to the company at Newark, within three months from such nonpayment of premium, to the purchase of a nonparticipating paid-up policy, payable at the time this policy would be payable if continued in force."

There was also the following indorsement:

"The following table shows the amount that the company agrees to loan (being one-half of the reserve) upon a satisfactory assignment of the policy as collateral security; also the additional time for which the insurance will be continued in full force after lapse by nonpayment of premium, or the value of the policy in paid-up insurance upon surrender within three months from date of lapse. The figures given are based upon the assumption that the premiums (less current dividends) have been fully paid in cash. If there be any indebtedness upon the policy, the values as stated in the table would have to be reduced proportionally upon the principles stated in the policy. The indebtedness, if any, may be paid off in cash, in which case the figures in the table will apply."

The table showed that after three premiums had been paid the company would loan $250 on the policy, or, in case of lapse of policy, the extended insurance purchasable would be for 3 years and 258 days, and the paid-up policy would be for $1,030.

(3) The insured, Johnson, settled three annual premiums on each policy according to the company's 30 per cent. premium loan plan, namely, by paying at the outset 70 per cent. of the premium in cash, and signing, with respect to the policies, respectively, certificates of loan for the balance, of one of which certificates the following is a copy, the other being identical with it except as to the distinguishing number of the policy:

Certificate of Loan.

Newark, N. J., Jan. 15th, 1891.

Premium Payable Nov. 11th.

Certificate of Loan on Policy No. 165,039.

This certifies that the Mutual Benefit Life Insurance Company has loaned on policy No. 165,039 one hundred and seven $82/100$ dollars, being thirty per cent. on the first annual premium, which, with any additional loan, shall be a lien on the policy until paid: legal interest on the same to be paid annually out of the dividend, if any, otherwise to be paid in cash; the amount of the existing loan to be indorsed hereon, and also stated on the renewal receipt.

Frank C. Johnson.

At the settlement of the annual premiums on the 11th of November, 1891, in the case of each policy, the amount of the then existing premium loan, namely, $145.21, was indorsed on the certificate of loan, and also entered on the margin of the renewal receipt which was then issued to the insured; and this was again done at the settlement of the annual premiums on the 11th of November, 1892, the amount of the premium loan then remaining outstanding being $182.74 on each policy.

(4) In the case of each of the policies there was a total failure to pay or settle the premium which became due on the 11th day of November, 1893, and thereupon the policies, by their terms, ceased and determined.

(5) The reserve on each policy at the time of the lapse amounted to $508.36. The indebtedness on each for premium loan as above mentioned amounted to $182.74, which, with interest for one year, $10.96, amounted to $193.70. The net reserve, less said indebtedness on each policy at the time of lapse, was, therefore, $314.66,—the purchase price of term insurance for 2 years and 104 days.

(6) The insured, Johnson, did not apply for the benefit of the second alternative of the nonforfeiture provisions of the policies, and after the expiration of the three months therein provided, namely, on February 27, 1894, the defendant (the insurance company) prepared, and, in accordance with its practice in like cases, executed, under the hand of its president, its usual certificates in such cases, numbered respectively 200,738 and 200,739, one for each policy, reciting that the original policy had lapsed by nonpayment of premium on November 11, 1893, and certifying that the net reserve thereon at the time of lapse, viz. $508.36, less the outstanding premium loan and accrued interest, amounting to $193.70, leaving $314.66, had been applied to the purchase of term insurance for the said sum of $10,000; that the term of said insurance would be 2 years and 104 days from and after the 11th day of November, 1893; and also certifying the terms and conditions of such term insurance as indorsed on the policies. And the company at the same time, in accordance with its practice in such cases, made on its books of account appropriate entries showing that these certificates of term insurance for 2 years and 104 days, expiring February 23, 1896, had been substituted for, and stood as liabilities in lieu of, the original policies. The premium loan account was at the same time credited with the amount theretofore due on these policies, and the difference between the reserve and loan on each policy was at the same time credited to the policy

account as new premium; and thereafter the premium loans were no longer carried as assets of the company, nor the original policies as liabilities, but the certificates of term insurance were thereafter the only liabilities appearing on the company's books on account of their relations with Frank C. Johnson.

(7) On October 14, 1895, Johnson assigned these policies to the plaintiff bank, which on the same day sent the assignments and copies to the defendant, and the defendant, on October 17th, indorsed on the original assignments an acknowledgment of their receipt, and forwarded them to the plaintiff, with a letter stating that the term insurance which had been substituted for these policies expired on February 23, 1896.

(8) On February 18, 1896, which was five days before the extended insurance would expire, the plaintiff tendered to the defendant the amount of each premium loan, with interest, claiming its right to pay the indebtedness at that time, and secure a further extension of the insurance. This tender the defendant declined, denying the plaintiff's claim to a further extension of the insurance,

(9) Frank C. Johnson died September 28, 1896.

E. Q. Keasby and Artemus H. Holmes, for plaintiff.
William S. Dodd, John O. H. Pitney, and R. V. Lindabury, for defendant.

Upon these facts the court determines the law of the case to be as expressed in the following opinion:

ACHESON, Circuit Judge. 1. It is contended on behalf of the plaintiff that there was no "indebtedness to the company on this policy" to be deducted from its net reserve within the meaning of the nonforfeiture provisions, and therefore that the extended insurance was for the full term of 3 years and 258 days from November 11, 1893, the date of the lapse, which would carry the term insurance beyond the date of the death of the insured. The plaintiff insists that the "indebtedness" mentioned and provided for in the nonforfeiture provisions is indebtedness for loans made in cash by the company to the policy holder upon an assignment of the policy as collateral, and does not apply to a transaction represented by the certificate of loan, which, it is urged, is simply a credit of 30 per cent. of the premium payment, not enforceable as a debt, but which is to be liquidated, acquitted, and recouped as therein provided, and not otherwise. But I am not able to perceive any sound reason for thus construing the nonforfeiture provisions of the policy. No distinction is therein made between cash loans and premium loans. The language used is, "Any indebtedness to the company on this policy." This is comprehensive enough to embrace the transaction evidenced by the certificate of loan. While it may be that in the settlement of an annual premium the portion thereof represented by the certificate of loan does not actually pass back and forth between the insured and the company, yet the transaction in substance is a loan of money. The certificate designates it a "loan," the amount bears "interest," and it is made a lien on the policy until "paid." No doubt the company's main reliance is up-

on this lien because of its effectiveness, but personal liability is not expressly or necessarily excluded. A loan imports an obligation to pay back. I do not see why an action could not be maintained on the certificate of loan after demand. Debt lies whenever a sum certain is due, without regard to the way in which the obligation was incurred, or by what it is evidenced. Stockwell v. U. S., 13 Wall. 531. But whether or not the premium loan imposes a personal liability upon the insured, it is an "indebtedness to the company on the policy," within the fair meaning of the nonforfeiture provisions. The authorities relied on do not, I think, sustain the contrary view. It is the net reserve, less all indebtedness on the policy, including the outstanding premium loan, that is to be invested in the new form of insurance, whether under the first or second alternative clause. This does exact justice to both parties to the contract. But if, in case of the purchase of term insurance, the premium loan is not deducted, and the insured should outlive the purchased term, then the company's lien would be gone, and the premium loan left unpaid. A construction of the contract which might lead to such a result is not to be accepted. I am of the opinion that the premium loan on each of the policies in suit outstanding at the time of the lapse was an indebtedness to the company on the policy within the meaning of the nonforfeiture provisions.

2. It is, however, further contended on behalf of the plaintiff that, if there was an indebtedness to the company on the policies for premium loans at the date of the lapse, the plaintiff had a right to pay off that indebtedness on February 18, 1896, and that the tender of payment then made operated to extend the term of insurance until July 27, 1897. This argument is based upon the statement on the back of the policy immediately preceding the table, which, among other things, shows the additional time for which the insurance will be continued in full force after lapse by nonpayment of premium, viz.:

"The figures given are based upon the assumption that the premiums (less current dividends) have been fully paid in cash. If there be any indebtedness upon the policy, the values as stated in the table would have to be reduced proportionally upon the principles stated in the policy. The indebtedness, if any, may be paid off in cash, in which case the figures in the table will apply."

Now, treating this statement as part of the contract of insurance, it must be read in connection with the body of the policy and the nonforfeiture provisions indorsed thereon, and when so read no such effect as is here claimed can reasonably be given to the statement. This clause has relation to the time of the lapse, when the original policy ceases and determines, and new insurance is to be substituted agreeably to the nonforfeiture provisions. Those provisions give to the policy holder upon such lapse the benefit of the net reserve then appertaining to his policy after deducting therefrom the indebtedness to the company on the policy. The net reserve, less said indebtedness, the company must apply to the purchase of term insurance; or, at the option of the insured, if signified within three months after lapse, to the purchase of a paid-up policy. The explanatory clause in connection with the table states: "The indebtedness, if any, may be paid off in cash, in which case the figures in the table

will apply." But when may the indebtedness be paid off to secure the application of the figures in the table? Certainly, it must be within the three months after lapse, during which the insured has the option to demand a paid-up policy instead of term insurance. Clearly, the net reserve, less the indebtedness, must be invested either in term insurance or in a paid-up policy, during or at the expiration of three months from the lapse. Upon the expiration of that period the rights of the parties are definitely fixed. This construction of the contract harmonizes all its provisions, is reasonable, and is perfectly just both to the insured and the company.

I do not regard it as a matter of any moment that the certificates of loan were not surrendered, nor the certificates of extended insurance delivered to Johnson. In this there was no departure by the company from its usual course of business. Johnson retained possession of his policies, and did not apply for the other papers, which he could have had for the asking. I am of the opinion that the term insurance to which Frank C. Johnson was entitled under the policies in suit expired on the 23d day of February, 1896. Accordingly, upon the facts and law of the case as above stated, the court finds in favor of the defendant.