OMAHA NAT. BANK v. MUTUAL BEN. LIFE INS. CO.

(Circuit Court of Appeals, Third Circuit. November 19, 1897.)

No. 35.

1. LIFE INSURANCE—CONSTRUCTION OF POLICY.

Under a life insurance policy containing nonforfeiture provisions declaring that, upon default after payment of two annual premiums, the net reserve, "less any indebtedness to the company on this policy," would be applied to the purchase of nonparticipating term insurance, a payment of a premium part in cash and part by a loan from the company, evidenced by a certificate signed by insured, reciting that the company has loaned the amount on the policy, constitutes an indebtedness due the company, within the meaning of such provisions.

2. SAME—TENDER—EXTENSION OF TERM INSURANCE.

When, under the nonforfeiture terms of a defaulted life insurance policy, the net reserve, less indebtedness to the company, has been applied to the payment of term insurance, the insured cannot, two years after such de-

fault, and within a few days before the time of the expiration of the term insurance, extend the same by tendering the amount of such indebtedness. 81 Fed. 935, affirmed.

In Error to the Circuit Court of the United States for the District of New Jersey.

This was an action by the Omaha National Bank against the Mutual Benefit Life Insurance Company to recover upon two policies insuring the life of Frank C. Johnson. The defendant had judgment (81 Fed. 935), and the plaintiff brings error.

Artemas H. Holmes and Edward Q. Keasbey, for plaintiff in error. J. O. H. Pitney and R. V. Lindabury, for defendant in error.

Before DALLAS, Circuit Judge, and BUTLER, District Judge.

DALLAS, Circuit Judge. This was an action upon two life insurance policies, which, except as to their distinguishing numbers, are precisely alike. They respectively bear date as of January 15, 1891, and by each of them, in consideration of the payment of a certain annual premium on each November 11th during the continuance of the policy, the defendant insured the life of Frank C. Johnson, the amount insured being payable at his death. They also provided that, in case the premiums were not paid when due, the policies should cease and determine, subject to the company's nonforfeiture provisions, which, with the accompanying table, is indorsed on the policies, as follows:

"The Mutual Benefit Life Insurance Company, Newark, N. J.

"Nonforfeiture Provisions.

"When, after two full annual premiums shall have been paid on this policy, it shall cease or become void solely by the nonpayment of any premium when due, its entire net reserve by the American Experience Mortality and interest at four per cent. yearly, less any indebtedness to the company on this policy, shall be applied by the company as a single premium at the company's rates published and in force at this date, either, first, to the purchase of nonparticipating term insurance for the full amount insured by this policy, or, second, upon the written application by the owner of this policy, and the surrender thereof to the company at Newark, within three months from such nonpayment of premium, to the purchase of a nonparticipating paid-up policy, payable at the time this policy would be payable if continued in force. Both kinds of insurance aforesaid will be subject to the same conditions, except as to payment of premiums, as those of this policy. No part, however, of such term insurance, shall be due or payable unless satisfactory proofs of death be furnished to the company within one year after death; and if death shall occur within three years after such nonpayment of premium, and during such term of insurance, there shall be deducted from the amount payable the sum of all the premiums that would have become due on this policy if it had continued in force.

"The following table shows the amount that the company agrees to loan (being one-half of the reserve) upon a satisfactory assignment of the policy as collateral security; also, the additional time for which the insurance will be continued in full force after lapse by the nonpayment of premium, or the value of the policy in paid-up insurance upon surrender within three months from date of lapse. The figures given are based upon the assumption that the premiums (less current dividends) have been fully paid in cash. If there be any indebtedness upon the policy, the values as stated in the table would

have to be reduced proportionately upon the principles stated in the policy. The indebtedness, if any, may be paid off in cash, in which case the figures in the table will apply.

| Number of Years Premium Paid. | Company will Loan. | IN CASE OF LAPSE OF POLICY. | | |
|---|---|---|---|---|
| | | Extended Insurance. | | Paid-Up Policy. |
| | | Years. | Days. | |
| 2 | 170 | 2 | 193 | $ 690 |
| 3 | 250 | 3 | 258 | 1,030 |
| 4 | 340 | 4 | 287 | 1,360 |
| 5 | 440 | 5 | 274 | 1,690 |
| 6 | 530 | 6 | 217 | 2,010 |
| 7 | 630 | 7 | 121 | 2,320 |
| 8 | 720 | 7 | 340 | 2,630 |
| 9 | 830 | 8 | 160 | 2,930 |
| 10 | 930 | 8 | 310 | 3,230 |
| 11 | 1,030 | 9 | 62 | 3,510 |
| 12 | 1,140 | 9 | 152 | 3,790 |
| 13 | 1,240 | 9 | 216 | 4,060 |
| 14 | 1,350 | 9 | 258 | 4,320 |
| 15 | 1,460 | 9 | 279 | 4,580 |
| 20 | 2,000 | 9 | 160 | 5,720 |
| 25 | 2,540 | 8 | 191 | 6,650 |
| 30 | 3,040 | 7 | 116 | 7,390 |
| 35 | 3,500 | 5 | 320 | 7,980 |
| 40 | 3,930 | 4 | 92 | 8,480 |

"Cash loans not made for less than fifty dollars.

"B. J. Miller, Mathematician."

The first three annual premiums were duly settled, but there was a failure to pay or settle the fourth premium when it became due, namely, on November 11, 1893. Consequently, the right of the plaintiff to recover turned upon the construction and effect to be given, under the admitted facts of the case, to the nonforfeiture provisions, in connection with a certain certificate of loan hereafter to be particularly mentioned; and the question was and is whether the insured was entitled to term insurance for a period continuing beyond the date of his death, or only for a shorter period, which expired while he was still living, namely, upon February 23, 1896. The plaintiff contended in the court below, and in this court, that the term insurance should be held to have continued until after the death of the insured—First, because there was no "indebtedness to the company on this policy," within the meaning of the contract and of the word "indebtedness" as used in the nonforfeiture provisions; and, second, because, even if there was such indebtedness, a tender which was admittedly made on February 18, 1896, was a timely, and therefore sufficient, tender of that indebtedness. By considering these two propositions, the case may be disposed of.

1. The learned argument which has been addressed to us respecting the definition (common and technical) of the word "indebtedness" does not go to the root of the matter. In our opinion, it invokes a too narrow and constrained view of the subject. No definition of the word "indebtedness," however authoritative and accurate, could be accorded controlling force. The question is as to the actual meaning and intent of the parties, and this is not to be ascertained by defining a single word with scholastic precision. The

nonforfeiture provisions unquestionably became operative upon the failure to pay the premium which fell due on November 11, 1893. The insured was then entitled to "nonparticipating term insurance"; and aside from the second proposition, presently to be discussed, the question upon which the existence of such insurance at the time of the death of the insured depends, is as to whether there was, when the term insurance began, any indebtedness to the company by which the duration of that insurance was limited or curtailed.    The table which follows the nonforfeiture provisions, and which may be treated as forming part of them, shows the time for which the term insurance would have continued if there had been no indebtedness upon the policy; but it was expressly provided that, if there should be such indebtedness, the table would have to be modified, unless payment of that indebtedness should be made in cash, in which case the figures in the table would apply.    Johnson, as has been mentioned, settled three annual premiums upon each policy.    This was done according to the company's 30 per cent. premium loan plan, namely, by paying at the outset 70 per cent. of the premiums in cash, and by signing certificates of loan for the balance, which, in each case, except as to the recited policy number, were as follows:

"Certificate of Loan.

"Newark, N. J., Jan. 15th, 1891.

"Premium Payable Nov. 11th.

"Certificate of Loan on Policy No. 165,039.

"This certifies that the Mutual Benefit Life Insurance Company has loaned on policy No. 165,039 one hundred and seven $82/100$ dollars, being thirty per cent. on the first annual premium, which, with any additional loan, shall be a lien on the policy until paid; legal interest on the same to be paid annually out of the dividend, if any, otherwise to be paid in cash; the amount of the existing loan to be indorsed herein, and also stated on the renewal receipt.

"Frank C. Johnson."

Now, the precise inquiry is:    Did the loan thus certified constitute such an indebtedness upon the policy as was contemplated by the nonforfeiture provisions?    If it did, then, in the absence of any payment or sufficient tender thereof, the problem now under examination must be solved in favor of the defendant in error.    We do not attach importance to the fact that the obligation certified was made a lien on the policy, and that, except by enforcement of that lien, no provision was made, or time fixed, for its payment.    The material question is:    What did the parties mean?    It cannot reasonably be supposed that they intended the word "indebtedness" to have any special or technical significance, and that, in common and ordinary apprehension, a "loan," no matter when or how payable, is understood to be an indebtedness, is indubitable.    That, too, in each of these instances, the loan was "on the policy," is, under the express terms of the certificate, unquestionable.    It is entitled "Certificate of Loan on Policy," and certifies that the company "has loaned on policy," etc.    We cannot believe that this correspondence of the terms of the certificate with those of the nonforfeiture provisions was accidental, but are convinced that the "loan" for

which the former was given was intended to be inclusive of the "indebtedness" to which the latter referred.

The decision of the supreme court in Insurance Co. v. Dutcher, 95 U. S. 269, has been earnestly pressed upon our attention by the learned counsel for the plaintiff in error, but it cannot be regarded as ruling the present case. Although the facts which were there involved bear some resemblance to those with which we are called upon to deal, they are really essentially different. The judgment in the Dutcher Case was based, not only upon the provisions of the particular policy, but also upon a certain collateral agreement which had been made by the parties at the time of the delivery of the policy; and the construction which the court placed upon the entire transaction accorded with a long-continued practice of the company, to which, as showing the insurer's interpretation of its own contract, much weight was given. In this case we have neither a collateral agreement to consider, nor any course of business under like policies to aid us in the construction of those directly in question. There is here nothing to be done but to determine, from the language of the nonforfeiture provisions and of the certificates, the true meaning of the former; and, in the decision to which we have referred, we find nothing which conflicts with our understanding of them. In that case, aside from the construction which had been put upon its policies by the company, the question was as to whether certain premiums should be regarded as having been paid "in cash"; and it was held that they should be, notwithstanding the fact that the payments were in part made (as the court viewed the matter) by means supplied by a "permanent loan" of the company to the insured. It was not held that this loan was not itself an indebtedness. Indeed, it appears to have been assumed that it was; but that question—the vital one here—was not there presented, and this difference it is which plainly distinguishes that case from this. In that one the undertaking of the company was to issue a "paid-up policy for as many tenths of the amount originally assured as there had been annual premiums paid in cash"; and the only question being, as we have said, whether certain of the premiums had been so paid, the court held that they had been, and, therefore, that the paid-up policy there claimed was demandable. Had the existence of the asserted right to such a policy depended upon the absence of any indebtedness on the original policy, and had such indebtedness appeared as in this case, there is no reason to doubt that the judgment would have been different.

2. Payment of the indebtedness to which reference has been made was tendered on February 18, 1896; and this tender, if made in due time, would have been effectual to extend the period of term insurance beyond the time of the death of the insured. But we are clearly of opinion that it was too long postponed. The default in settlement of premium under the original policy occurred on November 11, 1893; and the tender was not made until more than two years thereafter, and until within a few days before the expiration of the time to which, irrespective of the tender, the term extended.

The nonforfeiture provisions conceded, it is true, that a right to the longer term might be acquired by payment of the indebtedness; but it would, we think, be most unreasonable to hold that the insured was under this provision, entitled, without paying his indebtedness, to insurance for the shorter term, and then, when that term was about to expire, to tender his debt, and thereupon insist upon an extension of the subsisting contract. In view of the circumstances of the case, it is not necessary to determine whether the tender should have been made promptly upon default under the original policy, or whether it might have been made during the period of three months allowed to the insured for making written application for a paid-up policy, if desired. In either view of the subject, the tender which was in fact made was too long delayed to be of any avail. The judgment is affirmed.