TATE v. MUTUAL BENEFIT LIFE INSURANCE COMPANY.

(Filed December 2, 1902.)

INSURANCE—*Policy—Premium—Dividends—Extended Insurance.*

The amount of a certificate of indebtedness given in part pay-
ment of an insurance premium is properly deducted from
the accumulated profits before their application to an exten-
sion of the policy, where the policy provides that the net
reserve, less any indebtedness to the company on the policy,
shall be applied to the extension of the policy.

DOUGLAS, J., dissenting.

ACTION by Sarah A. Tate against the Mutual Benefit Life
Insurance Company, heard by Judge *F. D. Winston* and a
jury, at June (Special) Term, 1902, of the Superior Court
of RUTHERFORD County. From a judgment for the defend-
ant, the plaintiff appealed.

*McBrayer & Justice,* and *E. J. Justice,* for the plaintiff.
*Burwell, Walker & Cansler,* for the defendant.

TATE *v.* INSURANCE CO.

FURCHES, C. J.   This action is prosecuted to enforce the
.collection of an insurance policy, issued to C. L. Tate on the
16th of December, 1890, for the benefit of the plaintiff.   The
annual premium on this policy was $24.42, to be paid on the
16th day of December of each succeeding year, which pay-
ment continued the policy for one year from the date of said
payment, at which time the policy became void if the pre-
mium was not paid.   But it was a mutual beneficiary asso-
ciation, in which the assured participated in the profits, and
when a policy became forfeited for the non-payment of pre-
miums, if there were accumulated profits belonging to the
assured, they were applied to the payment of such premiums,
and gave the assured the benefit of an extension of the policy
for such time as the accumulated profits paid for.   But it
gave him no right to participate in the accumulations after
the forfeiture for non-payment.

The last payment of premiums was on the 16th of Decem-
ber, 1893, which continued the policy, with all its benefits,
until the 16th of December, 1894, when the next premium
became due.   At that time there was due the assured from
the accumulated profits (called the reserve) the sum of
$41.36.   This amount, if applied to the payment of pre-
miums, would have extended the policy until after the death
of the assured.

But the policy contained other terms and conditions which
have to be considered.   It allowed a party to insure by pay-
ment in cash 70 per cent of the premium, and the .other 30
per cent in a certificate of indebtedness to the company, and
this policy was taken out on that plan.   It is claimed by the
defendant that these certificates of indebtedness should be
deducted from the $41.36 of accumulations, and only the bal-
ance, after deducting this indebtedness (and some other ex-
penses which we do not discuss lest it might produce confu-
sion) should be applied to extending the policy.   And it is

admitted that if this is done, the time of extension had ex-
pired before the death of the assured.   So this is the question
and forms the contention between the parties, and makes it a
question of law depending upon the construction of the
policy.

It has been held in *Insurance Co. v. Dutcher*, 95 U. S.,
269, in an action on a policy very much like the one under
consideration in that respect, that the notes or certificates of
indebtedness to the company for the 30 per cent of the pre-
mium were payments to the company, and so we hold in this
case.   And if the policy in other respects was like the one
involved in *Insurance Co. v. Dutcher*, we would hold that
the plaintiff should recover, and reverse the judgment ap-
pealed from.   In that case, as the defendant does in this case,
the insurance company sought to have the surplus applied
first to the payment of the premium notes due it, and only the
balance applied to the extension of the policy.   But the Court
in that case refused to allow that to be done, for the reason
that it was not provided for in the policy.

But the insurance company, since that decision and before
the policy sued on was taken out, had changed the wording
of its policies, and as it seems to us the provisions of its pol-
icies (this policy) so as to meet the difficulty pointed out in
the case of *Insurance Co. v. Dutcher, supra*.

It is provided in this policy that these notes or certificates
of indebtedness, given in part payment of premiums, shall be
a lien on the policy, and only "the net reserve less any indebt-
edness to the company on the policy" shall be applied to the
purchase of a non-participating policy, that is, to the exten-
sion of the policy.   This, it seems to us, distinguishes it
from *Insurance Co. v. Dutcher*, and this view is fully sus-
tained in *Omaha National Bank v. Ins. Co.*, 84 Fed. Rep.,
122.

The defendant in this case being the same defendant as in

that case, and the policy there sued on being the same as the one sued on this case, the Court below so held, and, as we fail to see the error complained of, the judgment is

Affirmed.

DOUGLAS, J., dissenting. I can not concur in the opinion of the Court, because I am not certain that the facts have been understood. It is true, the policy provides that any indebtedness of the assured to the company shall be a lien on the policy and may be deducted from the reserve. But are the de-. ferred premium notes an actual indebtedness? I doubt it. All old line companies stipulate for premiums largely in excess of what is reasonable or necessary, with a view to their reduction by so-called dividends. These dividends are no part of the surplus or reserve, but are payable annually to the assured, either in cash or by allowance in reduction of premiums. For instance, the stipulated annual premium on one of my life policies is $198.90, while this year's dividend amounted to $54.40, reducing the net amount of premium I was compelled to pay to $144.50. The reserve is entirely distinct, and is kept intact until the payment or expiration of the policy. In the latter event, it may be used under certain conditions for paid up or extended insurance.

I am under the impression that in the case at bar the assured was permitted to give his note for 30 per cent of his premium in lieu of dividends, with the expectation on both sides that the accruing dividends would pay the notes without recourse upon the assured. If this is true, and the notes have been or should have been paid by the accruing dividends, they are no longer an indebtedness, and can not be deducted from the reserve. This would leave the entire reserve belonging to the policy in a condition to be used for its extension. The defendant is said to be a mutual company, but the policy in dispute is apparently based on "old line" methods. It is certainly not upon the assessment plan.

If these facts are true, and I am free to say they are by no means clear, it would be a gross imposition upon the assured to permit the defendant to charge up against the surplus notes wholly or partially paid from the dividends, and thus defeat the entire policy of insurance.