## Short's Administratrix v. Reserve Loan Life Insurance Company.

(Decided May 11, 1917.)

### Appeal from Daviess Circuit Court.

1. Insurance—Life Insurance—Premiums—Breach of Payment.— Where the payment of a premium is a condition precedent to a life insurance contract taking effect, the breach may be proven by any competent evidence.

2. Insurance—Consideration For Contract.—The consideration of a life insurance policy, other than a statement made in the application, may be inquired into by evidence, and the true consideration ascertained, and shown that it has not been paid.

3 Insurance—Contract—Parol Agreement.—Where a life insurance policy provides that, upon a settlement of the policy or a benefit under it, any indebtedness on account of the policy shall be deducted, the indebtedness may be shown by any competent evidence, written or parol, but no parol agreement or preliminary contract made at the time or before the issual of the policy, which modifies or affects the terms cf the policy, nor any reference in the policy to the application, by-laws or rules of the insurance corporation, which is not written into the policy nor endorsed

upon it, or is not attached to and accompanies th~ policy, shall be considered as any part of the insurance contract.

LITTLE & SLACK and BIRKHEAD & WILSON for appellant.

GUILFORD A. DEITCH, FRANK G. WEST and W. P. SANDIGE for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

On May 31, 1905, the appellee, Reserve Loan Life Insurance Company, an insurance corporation of Indianapolis, Indiana, and authorized to do a general insurance business, entered into an insurance contract with William I. Short, deceased, by which it insured his life in the sum of $5,000.00. The policy issued bore the date of May 31, 1905, and other than the various conditions, stipulations, provisions and benefits included in the written policy, was as follows:

"In consideration of the warranties in the printed and written application for this policy of insurance, which is hereby made a part of this contract, and of the payment in advance of the sum of eight hundred and twenty-nine and 90/100 dollars, the commuted premium, for the seven years immediately preceding the date hereof; and of the further payment in advance of the sum of one hundred eighty-five and 65/100 dollars, hereby insures the life of William I. Short hereinafter called the insured, of Owensboro, county of Daviess, state of Kentucky, for a period of one year from the date hereof; and in consideration of the further payment of one hundred eighty-five and 65/100 dollars on or before the 31st day of May in every year thereafter during the continuance of this policy, until twenty annual premiums shall have been paid, Hereby Promises to Pay five thousand dollars to the executors, administrators or assigns of insured, subject to the provisions and conditions named herein, at the home office of the company, in the city of Indianapolis, sixty days after acceptance of satisfactory proofs of the death of the insured, during the continuance of this policy."

One of the provisions of the policy is as follows:

"Second. Extended Insurance.—After one year from the date hereof, upon the non-payment of any subsequent premium and without action on the part of the insured, this policy will become a non-participating policy for paid up term insurance for its full amount, to cease after .

the number of years and days stated in the table above for the end of the last year for which complete annual premiums have been paid. Provided, that any existing indebtedness to the company on account of this policy, if not paid in cash, will reduce the extended term of insurance indicated, in the ratio of such indebtedness to the reserve for such insurance."

By the table above referred to, it is shown that the extended insurance provided for at the end of the eighth year, when eight full premiums have been paid, was for the full amount of the policy for the term of thirteen years and one hundred and fifty days from the end of the eighth year.

Another provision of the policy is as follows:

"This policy shall not take effect until delivered to the insured while in good health; nor then, unless the first premium hereon is paid in cash, or a note for extension of time of such payment is accepted by the company at its home office in the city of Indianapolis."

It likewise contains the following provision:

"Any indebtedness to the company, including any balance of the current year's premium remaining unpaid, will be deducted in any settlement of this policy or of any benefit surrender thereunder."

Another clause in the policy is as follows:

"After this policy shall have been in force one full year, the company, within sixty days after written request, will in conformity with its rules then in force, loan up to the amount stated in the table above for the end of the last year for which complete annual premiums have been paid, with interest in advance, at the rate of five per centum per annum. Provided: (1) That this policy be duly assigned to the company as collateral security for such loan. (2) That any subsequent loan on this policy, together with all former loans and interest due, shall not exceed the amount specified in the above table opposite the numerical year then reached. (3) That in any settlement of this policy any outstanding loans must be paid. (4) That the premiums must be fully paid to the end of the policy year in which the loan becomes due."

The insured died on the 7th day of December, 1914.

The appellant, as the personal representative of the insured, sought, by this action, the recovery of the full sum of the insurance provided for in the policy, and by her petition substantially alleged the issual of the policy to her intestate and that he paid the commuted premium

of $829.90 for the seven years just immediately preceding the date of the policy, and the premium of $185.65 for the eighth year, at the date of the policy, which continued the policy in force until the 31st day of May, 1906; that he, decedent, made default in the payment of the premium for the ninth year or the year beginning on May 31, 1906, and ending on May 31, 1907, and that, by the terms of the policy, the paid up insurance was extended automatically for the full sum of $5,000.00, for the term of thirteen years and one hundred and fifty days after the default on the 31st day of May, 1906; and that decedent died before the expiration of the extended term of insurance. The entire policy was made a part of the petition and the clause relating to the conditions under which the extended insurance was provided for was especially relied upon.

The appellee answered and denied that the commuted premium of $829.90 for the seven years just preceding the date of the policy was ever paid by the insured or by any one for him, or that it was ever treated as paid by the appellee, or that the premium for either of the seven years or any part of either of them had ever been paid. The answer further averred, that the policy was issued on the single or commuted premium plan, under an agreement between the appellee and the insured, that the policy should become a paid up policy for the amount of the face of it upon the payment to the company of a premium of $185.65 on the 31st day of May, and on the same day, in each year from the date of the policy until thirteen annual premiums should have been paid, and the payment to it of a commuted premium for $829.90 for the seven years just preceding the 31st day of May, 1905; that when the insured made application for the policy he was unable to pay the commuted premium for the seven years preceding the date of the policy and at his request the appellee loaned him on the security of the policy and its accumulations the sum of $829.90, and to secure the payment of the debt the insured assigned the policy to the appellee; that the arrangement was set forth in a writing, which insured subscribed on the 29th day of May, 1905, and which was filed with the answer. The writing, in substance, stated that the appellee had loaned to the insured the sum of $829.90, being the reserve loan value of its policy No. 18215 at that date and issued by appellee to insured on May 31, 1905, and that the loan was secured by a pledge of the policy and its accumulations, and that the policy was deposited with appellee as

collateral security for the repayment of the loan, with interest at five per centum per annum, and that the loan and interest thereon should remain a lien upon the policy and its accumulations, until extinguished by the surplus apportioned to it, or should be otherwise paid to the appellee.   The writing was made part of the answer.   It was then averred that at the date of the application for the policy, that the insured paid to appellee the premium for the eighth year, but failed to pay the premium for the ninth year, when it became due; that, at the time of this default, the loan of $829.90, with its interest, was due and unpaid and has so remained ever since; that at that time the loan of $829.90, with its interest, amounted to $871.39; that the reserve for the policy at that time was $820.00, which was less than the indebtedness to appellee then existing on account of the policy, and that for that reason no surplus existed, which could be applied to extending the insurance under the terms of the policy, and hence there was no ground upon which appellant was entitled to make recovery.

To the answer, the appellant interposed a general demurrer, which being overruled, she declined to plead any further and her petition was thereupon dismissed and from the judgment she has appealed.

By the terms of the policy, it is provided that the policy shall not take effect, although delivered, until the first premium shall have been paid, in cash, or a note, for extension of the time for such payment, is accepted by the company.   Hence, the payment of the first premium or an arrangement for it as provided by the policy seems to be a condition precedent to the policy becoming in effect.   The appellant alleged in her petition that the first premium, which was the commuted one of $829.90, had been paid.   This averment, however, was denied by the answer.   The answer then avers the fact that it was agreed between the insured and the company to issue the policy to the insured upon the payment of the commuted premium for seven years, and the premium for the eighth year, in advance, and that the policy should become paid up after thirteen additional yearly payments in place of twenty, and the payment of the commuted premium as provided in the loan agreement; but that Short was unable to pay the commuted premium for the first seven years, which the policy was treated as having already run, and the company loaned to him the amount necessary to pay the commuted pre-

mium for the first seven years. The answer, however, does not expressly allege whether the acceptance of this "loan agreement" was to be given such effect as to put the policy in force or whether the actual sum of $829.90 was loaned to the insured, and that he failed to pay same on the premium, but taking all of the averments of the answer together, it is apparent that the transaction, between the insurance company and the insured, was that the "loan agreement" was executed for the unpaid premiums for the seven years preceding the date of the policy, and was accepted by the company in accordance with its terms, and at the same time, the insured paid the premium of $185.65, which was due upon that day, for the eighth year, and thus the policy became effective until the 31st day of May, 1906. There can be no doubt, that if the insured had died between the date of the policy and the 31st day of May, 1906, his estate would have been entitled to have received the entire amount of the insurance less the indebtedness, or else there would have been no reason in the transactions which had been entered into by the parties. Neither can there be any doubt, if the yearly premiums had been paid for each year after the eighth year, the insurance would have continued in full force and effect, nor, if the insured had died at any time within the term of the extended insurance, if there had been a reserve sufficient to have paid for such extension, less any indebtedness on account of the policy, after having made default in the payment of any one of the yearly premiums, his estate would have been entitled to the entire amount of the insurance. Having made default of the premium due on the 31st day of May, 1906, and having made payment of none of the premiums, thereafter due for the period of eight years, if only one yearly premium was ever actually paid upon the policy, there necessarily could have been a very small reserve apportioned to the policy when he defaulted in the payment of the premiums, to justify any extended insurance. In order for a life insurance company to have any reserve to apportion to a policy, it is necessary that it should collect each year from the insured an amount over and above the expenses of the company, or else there could be no reserve with which to pay the sum promised in the policy when it shall have matured. Hence, without the collection of the premiums there can be no reserve. This reserve fund is what is used to carry term insurance in case of the default of the payment of the premiums. It thus becomes

necessary for the beneficiary of the policy to show that premiums have been paid in order to lay a basis for a claim that there is a reserve due the policy, which will maintain term insurance. The payment of the premiums for the years preceding the default, except one, having been denied; and for the purposes of the demurrer the denial having been admitted to be true, no recovery could in any event be had, unless it was shown that the reserve arising from the one premium, which had been paid, had extended the insurance to a period beyond the death of the insured, and the reserve accumulated within eight years having only amounted to $820.00, as admitted, it is apparent that the reserve from the payment of the one premium could not extend the insurance for eight years and six months to the time of the death of the insured. Hence, it becomes necessary for appellant, if she would insist that eight yearly premiums had been paid, to rely upon the execution of the loan agreement as a payment for the first seven yearly premiums, or else they were never paid, at all.

It is insisted for appellant that under section 656 and 679, Kentucky Statutes, that the appellee is precluded from relying upon the loan agreement for any purpose, or using it in evidence for any purpose, and that both sides are bound by the presumption, that a written obligation to pay money is presumed to be based upon a sufficient consideration, and that the policy itself admits the payment of the commuted premium and of the yearly premium made at the date of the policy. It will, however, be observed that the policy itself does not state that the commuted premium or the other, either, had been paid before or at the time of the delivery of the policy, and the payment being a condition precedent, it is allowable, by any competent evidence, to be shown that the condition precedent had not been complied with. Besides, the payment of the commuted premium, as well as the yearly premium due upon that date, was a part of the consideration for the execution and delivery of the policy, and construing sections 656, 679, 470, and 472, Kentucky Statutes, all of which are in force, together, it has been held, as in Continental Casualty Co. v. Jasper, 121 Ky. 77, that in a contract of insurance, evidence may be received to show "what the true consideration of a policy of insurance was, and likewise to show that it was not paid." The demurrer, however, admits that the commuted premium was never paid, unless it was paid

or is to be treated as paid because of the transaction stated in the answer, which was the execution of the "loan agreement" and the acceptance of it by the company instead of a payment in cash. If the loan agreement is to have the effect of being considered a payment of the premiums for the seven years preceding the date of the policy, and is to be relied upon to create and maintain the reserve necessary for extending the term of insurance beyond the time of the default in the payment of the yearly premiums, it surely cannot then be regarded or treated as anything other than an evidence of the indebtedness on account of the past premiums having not been paid, and as such necessarily an indebtedness on account of the policy. Black v. Franklin Life Insr, Co., 67 S. E. 79; Rose v. Mo. State Life Insr. Co., 148 S. W. 181; Boulward v. Mo. State Life Insr. Co., 157 S. W. 761; Hay v. Meridian Life & Trust Co., 101 N. E. 651. The language of the policy is, "any existing indebtedness to the company on account of this policy," that is, that the policy is the reason for, the ground of, the consideration for or motive for the debt. If such a debt is not on account of the policy, it would be exceedingly hard to conceive on what account it is. It is insisted for appellant that the policy itself has provisions relative to loans, which will be made by the insurance company upon the policy or on account of it, and that the debt in question not being one provided for by the policy itself, that it cannot be considered to be a debt on account of the policy, within the meaning of the contract. The policy, however, while providing for certain conditions under which it will make loans to the insured, does not thereby preclude the company from making a loan, such as is described in the answer, as the policy expressly provides for the execution of notes for the premiums, and the effect of their acceptance by the company. The "loan agreement" recites that the amount loaned to the insured upon the policy is the entire reserve loan value of the policy at that date, and that it shall remain a lien upon the policy and its accumulations. Hence, it is concluded that the debt, of which the loan agreement is an evidence, is an indebtedness on account of the policy.

For appellant, it is insisted that under the provisions of sections 656 and 679, *supra,* that the "loan agreement" being preliminary to the execution of the policy and bearing upon the contract, which the policy contains, and not having been incorporated in the policy nor en-

dorsed upon it nor attached to it, nor accompanying it, that it cannot be relied upon by either party for any purpose, and cannot be considered as any part of the contract. The portion of section 656, *supra,* germane to the issue here, is as follows:

"Nor shall any such company nor any agent thereof make any contract of insurance or agreement as to such contract, other than is plainly expressed in the policy issued thereon."

Section 679, so far as it relates to the matter in controversy, is as follows:

"All policies or certificates hereafter issued to persons within the Commonwealth of Kentucky by corporations transacting business therein under this law, which policies or certificates contain any reference to the application of the insured or the by-laws or the rules of the corporation, either as forming part of the policy or contract between the parties thereto or as having any bearing on said contract, shall have such application, by-law and rules or the parts thereof relied upon as forming part of the policy or contract between the parties thereto or as having any bearing on said contract attached to the policy or certificate or printed on the face or reverse side thereof, and unless either so attached and accompanying the policy or printed on the face or reverse side thereof, shall not be received as evidence in any action for the recovery of benefits provided by the policy or certificate, and shall not be considered a part of the policy or contract between the parties. . . ."

This court has held that each of the sections, *supra,* is applicable to policies of life insurance issued by regular line life insurance companies, and has consistently held that any parol contract or separate writing containing stipulations not expressed in the policy or contrary to the provisions of the policy, or references in the policy to provisions of the application or by-laws or rules of the insurance company, not embraced in the policy nor endorsed thereon or attached to and accompanying the policy, cannot be considered as any part of the contract of insurance and have no effect upon it. Providence Assurance Society v. Beyer, 23 R. 2460; Rice v. Rice, 23 R. 635; Manhattan Insurance Co. v. Myers, 109 Ky. 373; Providence Assurance Society v. Puryear, 109 Ky. 381; Supreme Commandery v. Hughes, 114 Ky. 175; Metropolitan Life Insr. Co. v. Moore, 117 Ky. 651; American Guild v. Wyatt, 125 Ky. 44; Continental Cas-

ualty Co. v. Harrod, 30 R. 1117; Snedaker v. Metropol-
itan Life Ins. Co., 160 Ky. 119; Fidelity Mutual Life
Insr. Co. v. Price, 25 R. 1148; Providence Life Assurance
Co. v. Withers, 132 Ky. 541. There can be no doubt that
the inhibition provided in section 656, *supra,* relates to
the time the policy was issued. The "loan agreement"
plead as evidence of the indebtedness on account of the
policy, in the instant case, is not anything contained
in the application of the insured nor the by-laws nor the
rules of the corporation, and it is not pretended nor re-
lied upon as forming any part of the policy contract be-
tween the parties or as having any bearing on the terms
of the contract. True, the "loan agreement" is not em-
braced within the policy nor attached to it nor endorsed
upon it. In fact, it is no part of the policy contract
and does not change nor modify the contract as expressed
in the policy. The policy, indeed, in stating its consid-
eration, provides that the commuted premium shall be
paid in advance, but, by another provision of the policy,
it is provided that the company may waive this require-
ment and accept the note of the insured for the exten-
sion of the time of the payment of the premiums. While
the promise is expressed in the policy to pay $5,000.00
upon the death of the insured, it is also stated in the face
of the policy "to be subject to the provisions and condi-
tions named herein." One of the conditions named in
the policy, and fully expressed in it, is with relation to the
conditions under which extended insurance will be
granted, and which are, that one year from the date of
the policy, upon the default in the payment of a subse-
quent premium, the policy becomes a policy for paid up
term insurance for its full amount for the number of
years and days stated in the table, and that provision is
modified by the one, which provides, that any existing
indebtedness to the company on account of the policy,
if not paid in cash, will reduce the term of extended insur-
ance indicated in the table in the ratio of such indebted-
ness to the reserve for such insurance. Hence, the prom-
ise, in the policy, to pay the $5,000.00 upon the death of
the insured, during the continuance of the policy, is not
modified nor changed nor interfered with in any way by
the "loan agreement," but the modification of that prom-
ise is made in the policy itself, by the provisions above
quoted. The policy does not designate of what the in-
debtedness on account of the policy shall in every in-
stance consist of. The policy itself having provided,

that any existing indebtedness to the company on account of the policy, if not paid in cash, will reduce the term of extended insurance in the ratio of such indebtedness to the reserve of the policy, is there any reason why that written evidence of such indebtedness should not be competent and used to prove, not the existence of any contract, other than is expressed in the policy, but the existence of the indebtedness? The "loan agreement" is merely evidence of the existing indebtedness on account of the policy, and its terms are competent to prove the indebtedness and its relation to the policy. The indebtedness on account of the policy thus having been admitted, as existing, at the time of the default in the payment of the ninth yearly premium, and not having been paid in any way, and such indebtedness being in excess of the reserve, which can be used for providing the extended insurance, and thus leave no reserve for that purpose, there was not any extended insurance beyond the default in the payment of the ninth yearly premium.

Hence, the demurrer was properly overruled to the answer, and the judgment is therefore affirmed.