## JUANITA SCHOONOVER v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.[1]

November 25, 1932.

No. 29,012.

[1]Reported in 245 N. W. 476.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *George W. Jansen,* for appellant.

*Meighen, Knudson & Sturtz* and *Raymond N. Klass,* for respondent.

OLSEN, J.

Defendant appeals from an order granting plaintiff's motion for a new trial after a directed verdict for defendant.

The action is one to recover on a policy of life insurance issued by defendant, insuring the life of Joseph A. Schoonover, now deceased, wherein plaintiff, a daughter of decedent, is the beneficiary. The policy is an ordinary life policy, with premiums payable semi-annually. The policy was issued on January 3, 1923, in the state of Iowa. It was for $1,000 life insurance, with the provision that $1,000 additional be paid in case the insured, while the policy was in force, died from bodily injury effected solely through external, violent, and accidental means. The semi-annual premium was $24.07, payable January 3 and July 3 each year. The insured paid the premiums so provided up to and including the premium due January 3, 1926. He made no further payments and continued in default until his death on July 6, 1929. On February 3, 1926, he borrowed from defendant the sum of $50 under the loan provisions of the policy, which loan he did not repay.

The defense is that the policy had lapsed and wholly terminated because of the default in payment of premiums before the death of the insured. Plaintiff contends that because of the provisions of the policy for extended insurance in case of default in payment of premiums the policy was still in force at the time the insured died.

■ The policy contract here in question requires the insured to pay a semi-annual premium of $24.07 on January 3 and July 3 of each year at defendant's home office or to one of its authorized agents. It provides:

"If any premium be not paid when due, * * * this Policy shall be void and all premiums forfeited to the Company, except as herein provided. The payment of any premium shall not maintain the Policy in force beyond the date when the next payment becomes due, except as to the benefits provided for herein after default in premium payment."

The usual grace period of 31 days for payment of premiums is provided.

Coming to the provisions referred to in the exceptions mentioned, we find certain provisions for payment of a cash surrender value, or, in the alternative, for a paid-up life policy for an amount which such cash surrender value will purchase, after the policy has been in force for three years. These provisions are not here in question and need not be stated in detail. The cash surrender value and the amount of paid-up insurance which it will purchase is stated for each year in the table contained in the policy. We note in this connection that the amount to be paid to the insured under the cash surrender value provision is the stated cash surrender value less any indebtedness owing to the company; and, in case of a paid-up policy, the amount of such policy is to be reduced by the proportion that the total indebtedness bears to the stated cash surrender value. The policy further contains the general provision:

"Any indebtedness to the Company on account of this Policy will be deducted in any payment or payments or in any settlement under the Policy."

The policy provision most directly applicable here reads as follows:

"If this policy, having lapsed or become forfeited as specified in the clause, 'Paid-up Life Policy,' above, be not surrendered for its Cash Value or for a Paid-up Life Policy, the Company will put in

force in lieu of this Policy, *without any action on the part of the Insured,* a non-participating Paid-up Term Policy for the full amount insured by this Policy, exclusive of Disability and Accidental Death Benefits, the date of such Paid-up Term Policy to be the due date as specified on the first page hereof to which premiums on this Policy have been paid, and to continue in force for the term indicated by the following table; provided, however, that the Insured shall not have the right to borrow on such Policy and that if there be any indebtedness to the Company on account of this Policy the amount of such Paid-up Term Policy shall be the Face Amount of Insurance under this Policy less the amount of such indebtedness, and the term for which such Paid-up Term Policy shall run shall be changed to that term for which the Cash Surrender Value of this Policy herein specified, after deducting such indebtedness, will carry the modified amount at Single Premium Term rates. The Paid-up Term Policy will be delivered on the legal surrender of this Policy."

Below, following that, is the table of cash surrender values, and, based thereon, the amount for which a paid-up policy would be issued and the time for which extended insurance would result. This table is headed as follows: "Table of Loan and Non-forfeiture Values. (Values subject to reduction on account of any outstanding indebtedness as heretofore provided.)"

Under the heading "Loan Provisions" the policy provides:

"If this Policy be continued in force, the Insured may borrow from the Company, without the consent of the Beneficiary, if any, named herein, with interest at the rate of six per cent. per annum, payable at the end of each policy year, on the sole security of this Policy, an amount up to the limit of the Cash Surrender Value hereinafter specified after deducting therefrom all other indebtedness on account of this Policy, by making written application for the loan and assigning the Policy to the Company as security. Failure to repay any such indebtedness or to pay interest shall not avoid the Policy unless the total indebtedness thereon to the Company shall equal or exceed the loan value at the time of such failure,

nor until one month after notice to that effect shall have been mailed by the Company to the last known address of the Insured, of the person to whom the loan was made, and of the assignee of record at the Home Office of the Company, if any. The Company reserves the right to defer any loan, other than to pay premiums on policies in the Company, for a period not exceeding ninety days after application for such loan."

In obtaining the loan of $50, the insured, in his signed loan agreement, accepted by the defendant, agreed as follows:

"That if said Policy shall lapse or become forfeited in any manner, the amount of said loan, including any unpaid Loan Insurance premiums, with interest accumulated and accrued thereon shall be deducted from any cash surrender value of the said Policy, or the said loan, including any unpaid Loan Insurance premiums, with interest accumulated and accrued thereon shall operate in accordance with the rules of the Company to reduce the amount of any paid-up life or endowment policy, or the amount of any paid-up pure endowment policy, or to reduce the term of extended insurance or to reduce the amount and the term of extended insurance, as may be provided by the terms of said Policy."

The following provision as to payment of the loan in instalments appears:

"The Company is willing to accept repayments of loans in instalments of $5 and upwards, which may be paid at any time while the policy is in force. Repayments of your loan will, in case of your death, mean just so much more protection for your family when they may need it most."

The agreement contains the usual provision assigning to the company the policy and all profits and benefits due or to become due thereon, as security for the loan and interest thereon.

When the decedent failed to pay the premium due July 3, 1926, either at that time or within the 31 days' grace period, and failed to apply either for any cash surrender value or for any paid-up policy, the provision for extended insurance for the length of time

that the cash surrender value of the policy, less any indebtedness to the company, would carry the insurance for the amount in the policy provided, automatically took effect. By the policy provisions, the amount of such extended insurance is arrived at by deducting the amount of any indebtedness to the company from the face amount of insurance under the policy.

On July 3, 1926, the cash surrender value of the policy was $71.50. The amount of indebtedness owing the company was $51.18, leaving a net cash surrender value of $20.32. This carried the policy, as extended insurance, in the amount of $948.82 for a period of one year and approximately 113 days, or up to October 24, 1927. The amount of $948.82 is arrived at by deducting the $51.18 indebtedness from the face of the policy. If this deduction from the amount of the policy be not made, the extended insurance would expire some days before October 24, 1927.

The court at the close of the evidence directed a verdict for defendant. On plaintiff's motion, the court granted a new trial on the ground that it had erred in so directing a verdict.

The court, as disclosed by its memorandum, was of the opinion that, by the provisions of the policy for deducting the amount of the indebtedness from the cash surrender value and also deducting it from the face of the policy in fixing the amount of the extended insurance, there was a forfeiture of something, which constituted a penalty and could not be allowed; that the entire cash surrender value, without any deduction for decedent's indebtedness, should have been applied in payment for extended insurance, and, when so applied, it extended the insurance beyond the time of the death of the insured.

The policy, as well as the loan agreement, provides that where there is such an indebtedness it may be deducted both from the cash surrender value and from the face of the policy in figuring the length of time of the extended insurance. The reduction from the face of the policy has the effect of extending the insurance beyond the date to which it would extend, if the amount was not so reduced. The extension operated automatically, without any action

on the part of the insured or of the company. The company contends that under the policy as well as under the loan agreement the insured, not having surrendered his policy or made application for its cash surrender value or for any paid-up policy, the policy lapsed and terminated at the expiration of the time for which the cash surrender value, less the amount of the indebtedness secured thereby, extended the insurance.

The question narrows down to whether under this policy the loan indebtedness should be deducted from the cash surrender value in determining the time for which extended insurance automatically became effective. The weight of authority sustains such deduction when the policy so provides. Pacific Mut. L. Ins. Co. v. Davin (C. C. A.) 5 F. (2d) 481; Massachusetts Mut. L. Ins. Co. v. Jones (C. C. A.) 44 F. (2d) 540; Omaha Nat. Bank v. Mutual B. L. Ins. Co. (C. C.) 81 F. 935; New York L. Ins. Co. v. Slocum (C. C. A.) 177 F. 842; Slocum v. New York L. Ins. Co. 228 U. S. 364, 33 S. Ct. 523, 57 L. ed. 879, Ann. Cas. 1914D, 1029; Federal L. Ins. Co. v. Kemp (C. C. A.) 257 F. 265; Langley v. Prudential Ins. Co. (D. C.) 271 F. 776; Scheuer, Wise & Co. v. New York L. Ins. Co. 203 Ala. 127, 82 So. 157; Missouri State L. Ins. Co. v. Fry, 130 Ark. 419, 197 S. W. 700; Rife v. Union Cent. L. Ins. Co. 129 Cal. 455, 62 P. 48; N. W. Mut. L. Ins. Co. v. Ross, 63 Ga. 199; Black v. Franklin L. Ins. Co. 133 Ga. 859, 67 S. E. 79; Dibrell v. Citizens Nat. L. Ins. Co. 152 Ky. 208, 153 S. W. 428; Short's Admx. v. Reserve Loan L. Ins. Co. 175 Ky. 554, 194 S. W. 773; Emig's Admr. v. Mutual B. L. Ins. Co. 127 Ky. 588, 106 S. W. 230, 23 L.R.A.(N.S.) 828; Fidelity Mut. L. Ins. Co. v. Oliver, 111 Miss. 133, 71 So. 302; Taylor v. New York L. Ins. Co. 197 N. Y. 324, 90 N. E. 964; Perry v. Prudential Ins. Co. 144 App. Div. 780, 129 N. Y. S. 751; Tate v. Mutual B. L. Ins. Co. 131 N. C. 389, 42 S. E. 892; Mills v. National L. Ins. Co. 136 Tenn. 350, 189 S. W. 691; Meserole v. Southwestern L. Ins. Co. (Tex. Civ. App.) 203 S. W. 1161; Stratton's Admr. v. New York L. Ins. Co. 115 Va. 257, 78 S. E. 636; Alexander v. N. W. Mut. L. Ins. Co. (Mo. App.) 290 S. W. 452; Algoe v. Pacific Mut. L. Ins. Co. 91 Wash. 324, 157 P. 993, L. R. A. 1917A, 1237; Hull v. N. W. Mut.

L. Ins. Co. 39 Wis. 397; Dewerthern v. Reserve Loan L. Ins. Co. (Mo. App.) 234 S. W. 1048.

■ Plaintiff contends that this automatic extension amounts to a foreclosure or forfeiture of the policy for nonpayment of the loan, and that therefore 30 days' notice of intention so to foreclose must be given as provided in the loan provisions of the policy. But this policy lapsed because of nonpayment of premiums, not because of any default in the payment of the loan. There has been no attempted foreclosure of the loan or cancelation of the policy for nonpayment of the loan.

■ It is also contended that the evidence does not show that any notice of the due date or default in payment of premiums was given the insured. The policy contains no provision requiring notice of nonpayment or due date of premiums. There is some evidence tending to show that it was the custom of the defendant company to mail notice of the due date of premiums, and that such custom was followed and notice given. Plaintiff objected to this evidence, but the court admitted it. Whether the foundation for such evidence was sufficient, and its probative force, were questions for the trial court.

■ It is urged that the evidence as to nonpayment of premiums was insufficient. This evidence, with the letters from the company to the insured on August 5 and September 15, 1926, and the letter of the insured to the company on January 28, 1927, sufficiently shows notice and knowledge on the part of the insured of the nonpayment of the premium. The trial court held it sufficient.

■ The one point which seems to have been considered decisive by the trial court on the motion for a new trial is that the provisions of the policy permitting deducting the unpaid loan from the surrender value, and also from the amount of the extended insurance, were penalty provisions and therefore invalid. As already noted, the effect of deducting the indebtedness of $51.18 from the face of the policy was to extend the insurance for a longer time than if no such deduction had been made. That would seem to have been a benefit rather than a detriment to the insured and

beneficiary. Had loss occurred under this policy while the extended insurance was in force, the question might properly have been presented whether, after deducting the indebtedness from the cash surrender value, such indebtedness could also be deducted from the amount of the insurance. Some courts hold that by deducting the indebtedness from the cash surrender value the indebtedness is paid, and the extended insurance for the balance of the cash surrender value is for the full face value of the policy. Other cases hold that the indebtedness, where so provided in the policy, may properly be deducted, first, from the cash surrender value, and, second, from the amount of the extended insurance. In the present case where, on either theory, the insurance expired more than a year before the death of the insured, the question does not seem to be important. Such deduction is upheld in the cited cases of Pacific Mut. L. Ins. Co. v. Davin (C. C. A.) 5 F. (2d) 481, 483; Massachusetts Mut. L. Ins. Co. v. Jones (C. C. A.) 44 F. (2d) 540; Alexander v. N. W. Mut. L. Ins. Co. (Mo. App.) 290 S. W. 452; and allowed in Algoe v. Pacific Mut. L. Ins. Co. 91 Wash. 324, 157 P. 993, L. R. A. 1917A, 1237. As said in Pacific Mut. L. Ins. Co. v. Davin [5 F. (2d) 483]:

"In the absence of statute, the parties may agree for whatever grace, be it great or small, the company may be willing to give and the assured is willing to accept. It is a pure matter of contract."

■ We find no penalty imposed and no forfeiture provided in the present policy. The insured received insurance for the time the premiums were paid. He then received extended insurance for the full term that the net surrender value of his policy, after the deduction of his indebtedness, provided. The company carried out the terms of its contract, and no valid reason is shown which would justify the court in invalidating or disregarding some of the terms of the contract and enforcing others.

■ The reception in evidence of certain books and records of the company is said to have been error. This court follows the liberal rule that books and records, made and kept by a business man or concern in the usual course of business, are generally admissible in

evidence; and whether sufficient foundation has been laid therefor rests with the trial court. State v. Virgens, 128 Minn. 422, 151 N. W. 190.

■ Any claim that the loan was an ordinary commercial or banker's loan, and not so connected with or governed by the policy as to permit including in the policy a valid provision for deducting the amount of the loan from the cash surrender value of the policy, is not tenable.

Plaintiff's counsel have with commendable diligence furnished us with copies of some 68 decisions, which we have examined. We cannot attempt to analyze these cases without extending this opinion beyond reasonable bounds.

We find no errors in the trial below justifying the granting of a new trial.

The order appealed from is reversed.

